IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHARTER COMMUNICATIONS, INC., | ) | |
| WIDEOPENWEST FINANCE LLC a/k/a | ) | |
| WOW! INTERNET, CABLE & PHONE, | ) | |
| KNOLOGY, INC., | ) | |
| CEQUEL COMMUNICATIONS, LLC, d/b/a | ) | |
| SUDDENLINK COMMUNICATIONS, | ) | |
| and CABLE ONE, INC., | ) | C.A. No. 14-055 (SLR) |
| | ) | |
| Plaintiffs, | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| v. | ) | **PUBLIC REDACTED VERSION** |
| | ) | |
| ROCKSTAR CONSORTIUM US LP and | ) | |
| CONSTELLATION TECHNOLOGIES LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
jtigan@mnat.com
*Attorneys for Plaintiffs*

OF COUNSEL:

Thomas L. Duston
Kevin D. Hogg
John R. Labbé
Benjamin T. Horton
MARSHALL, GERSTEIN BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL  60606-6357
(312) 474-6300
*Attorneys for Charter Communications, Inc.*

William Ray Price, Jr.
Jennifer E. Hoekel
Richard L. Brophy
Mark A. Thomas
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, MO  63105
(314) 621-5070
*Attorneys for WideOpenWest Finance LLC
a/k/a WOW! Internet, Cable & Phone,
Knology, Inc. and Cequel Communications,
LLC d/b/a Suddenlink Communications*

Charles W. Steese
IJay Palansky
STEESE, EVANS & FRANKEL, P.C.
6400 South Fiddlers Green Circle, Suite 1820
Denver, CO  8011
(720) 200-0676
*Attorneys for WideOpenWest Finance LLC
a/k/a WOW! Internet, Cable & Phone and
Knology, Inc.*

John M. Desmarais
Jonas R. McDavit
Karim Z. Oussayef
Dustin F. Guzior
Michael P. Stadnick
Alex Henriques
Edward Terchunian
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400
*Attorneys for Charter Communications, Inc.,
WideOpenWest Finance LLC a/k/a WOW!
Internet, Cable & Phone, Knology, Inc.,
Cequel Communications, LLC d/b/a
Suddenlink Communications and Cable One,
Inc.*

June 6, 2014 - Original Filing Date
June 13, 2014 - Redacted Filing Date

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHARTER COMMUNICATIONS, INC., | ) | |
| WIDEOPENWEST FINANCE LLC a/k/a | ) | |
| WOW! INTERNET, CABLE & PHONE, | ) | |
| KNOLOGY, INC., | ) | |
| CEQUEL COMMUNICATIONS, LLC, d/b/a | ) | |
| SUDDENLINK COMMUNICATIONS, | ) | |
| and CABLE ONE, INC., | ) | C.A. No. 14-055 (SLR) |
| | ) | |
| Plaintiffs, | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| v. | ) | **CONFIDENTIAL –** |
| | ) | **FILED UNDER SEAL** |
| ROCKSTAR CONSORTIUM US LP and | ) | |
| CONSTELLATION TECHNOLOGIES LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

Plaintiffs Charter Communications, Inc. ("Charter"), WideOpenWest Finance, LLC a/k/a WOW! Internet, Cable & Phone ("WideOpenWest"), Knology, Inc. ("Knology" and, together with WideOpenWest, "WOW"), Cequel Communications, LLC d/b/a Suddenlink Communications ("Suddenlink"), and Cable One, Inc. ("Cable One") (collectively, "Plaintiffs") allege as follows for their Amended Complaint against Rockstar Consortium US LP ("Rockstar") and Constellation Technologies LLC ("Constellation") (collectively, "Defendants"):

## NATURE OF THE ACTION

1.     Rockstar is a patent assertion entity whose only business is the assertion, against manufacturers and service providers, of patents it acquires from third parties. Rockstar claims to own and/or control over 4,000 patents, virtually all of which Rockstar acquired from the bankruptcy estate created when Nortel Networks Corporation, Nortel Networks Inc., and various of their subsidiaries (collectively, "Nortel") filed for bankruptcy protection in Canada and the United States in 2009.

2.     Through a campaign to enforce this recently-acquired portfolio, Rockstar has accused Plaintiffs—which are multi-system operators of cable systems ("MSOs") that provide television, phone, and Internet services—of infringing large swaths of the portfolio, based on Plaintiffs' adoption of various communication and networking technologies related to those services.

3.     Rockstar has alleged that Plaintiffs, and other MSOs that provide similar services, infringe a number of communications patents including U.S. Patent Nos. 5,471,474 (the "'474 patent"), 5,583,862 (the "'862 patent"), 5,761,197 (the "'197 patent"), 5,959,990 (the "'990 patent"), 6,128,649 (the "'649 patent"), 6,130,893 (the "'893 patent"), 6,192,397 (the "'397 patent"), 6,321,253 (the "'253 patent"), 6,845,389 (the "'389 patent"), 6,901,048 (the "'048 patent"), 7,154,879 (the "'879 patent"), 8,134,917 (the "'917 patent"), 8,464,299 (the "'299 patent"), and RE40,999 (the "'999 patent") (collectively, "the Rockstar Asserted Patents" or "Asserted Patents").  The Rockstar Asserted Patents are attached hereto as Exhibits 1-14.

4.     Rockstar has subsequently assigned certain of the Asserted Patents to Constellation, which has brought suit against MSOs that provide similar services to those that Plaintiffs provide, and to Spherix, who has brought suit against one of Plaintiffs' vendors, Cisco Systems, Inc. ("Cisco").

5.     These public allegations of infringement, threats of litigation, and lawsuits have cast a cloud of uncertainty over Plaintiffs' businesses requiring the declaratory and other relief sought in this Complaint.

6.     Rockstar contends that it is able to levy these allegations against Plaintiffs because many of the patents obtained from Nortel are patents that, according to Rockstar,

allegedly apply to well-established technical standards that have become ubiquitous in the MSO industry.

7.    In many instances, the equipment Plaintiffs purchase from vendors, such as Cisco and ARRIS Group, Inc. ("ARRIS"), is designed to comply with such technical standards so that it can interoperate with other communications providers and their end-user customers.

8.    Defendants' predecessors-in-interest agreed to license certain of the Asserted Patents that apply to technical standards either royalty-free or on fair, reasonable and non-discriminatory ("F/RAND") terms as part of agreements entered into with one or more Standard Development Organizations ("SDOs").  Plaintiffs are implied licensees and third-party beneficiaries to such agreements.

9.    Defendants' obligation to license standard-essential patents ("SEPs") royalty-free or on F/RAND terms necessitates that Rockstar identify those patents within the portfolio that are subject to such obligations.  Nevertheless, Rockstar has refused to provide such information to Plaintiffs.

10.   Certain of the patents asserted by Defendants are burdened with royalty-free licenses previously granted by Rockstar's predecessors-in-interest as part of agreements entered into with one or more SDOs.  Plaintiffs are implied licensees and third-party beneficiaries to such agreements.  Moreover, Rockstar's right to sue Plaintiffs for infringement of these patents was exhausted once Plaintiffs purchased equipment and software embodying and/or used to practice the alleged inventions claimed in these patents by licensed vendors.  Notwithstanding these facts, Rockstar, for itself and on behalf of Constellation and Spherix, has

wrongfully claimed that Plaintiffs are practicing these patents without authority, and Defendants have improperly demanded that Plaintiffs negotiate a royalty-bearing license to these patents.

11. These activities by or on behalf of Defendants create an immediate, definite, concrete and substantial dispute regarding Plaintiffs' alleged infringement of patents in Rockstar's portfolio, including, but not limited to, those patents specifically identified above.

12. Defendants have misused and attempted to obtain exorbitant royalties from licensing the patents it purchased from Nortel by: (a) refusing to identify to potential licensees the patents it seeks to enforce, and instead broadly accusing companies of infringing the portfolio as a whole; (b) requiring potential licensees to sign non-disclosure agreements as a precondition to negotiating licensing agreements for the purpose of obtaining royalties in excess of its royalty-free or F/RAND obligations; (c) refusing to identify patents already licensed to vendors in an attempt to avoid exhaustion and extort multiple royalties; and (d) transferring patents to third parties in an attempt to obtain increased royalties and avoid Defendants' royalty-free or F/RAND licensing obligations.

13. In order to clear the cloud created by these threats, Plaintiffs bring this action for breach of contract and breach of covenant of good faith and fair dealing as a result of Defendants' refusal to honor their F/RAND and royalty-free licensing obligations, for unfair competition under Delaware law, and for various declaratory judgments by the Court.

## **PARTIES**

14. Charter is a Delaware corporation with its principal place of business at 400 Atlantic Street, 10th Floor, Stamford, Connecticut 06901. Charter is an MSO in the United States, offering a variety of entertainment, information, and communications technologies and solutions to residential and commercial customers.

15.     Charter offers the following services to its customers:

     a.     High-Speed Internet;

     b.     Digital TV Services;

     c.     Digital Phone Services;

     d.     Level 3 VPN Services;

     e.     Switched Digital Video;

     f.     Video On Demand; and

     g.     IP Cable TV Services.

16.     Charter uses equipment that complies with the following technologies, in whole or in part:

     a.     DOCSIS 2.0/3.0; and

     b.     Multi-Protocol Label Switching Protocols or Networks.

17.     Charter uses at least the following Cisco products to implement the above services or comply with the above technologies:

     a.     Cisco Cable Modem Termination Systems ("CMTSs");

     b.     Cisco Cable Modems ("CMs");

     c.     ███████████████

     d.     █████████████████████

     e.     ██████████████████

     f.     Cisco Set-Top Boxes ("STBs");

     g.     Cisco Routers; and

     h.     Cisco Switches.

18.     Charter uses at least the following ARRIS products to implement the above services or comply with the above technologies:

      a.     ARRIS CMTSs;

      b.     ARRIS eMTAs;

      c.     ARRIS STBs; and

      d.     █████████████

19.     WideOpenWest and Knology are Delaware corporations each having a principal place of business at 7887 E Belleview Ave., Suite 1000 Englewood, Colorado 80237. WideOpenWest and Knology are MSOs in the United States, offering a variety of entertainment, information, and communications technologies and solutions to residential and commercial customers.

20.     WideOpenWest and Knology offer the following services to their customers:

      a.     High-Speed Internet;

      b.     Digital TV Services;

      c.     Digital Phone Services;

      d.     Level 3 VPN Services;

      e.     Video On Demand; and

      f.     Whole-House DVR Networks.

21.     WideOpenWest and Knology use equipment that complies with the following technologies, in whole or in part:

      a.     DOCSIS 2.0/3.0;

      b.     PacketCable 1.5;

   c.  Multi-Protocol Label Switching Protocols or Networks; and

   d.  Passive Optical Networks.

  22.  WideOpenWest and Knology use at least the following Cisco products to implement the above services or comply with the above technologies:

   a.  Cisco CMs;

   b.  Cisco Cable Cards;

   c.  Cisco DTAs;

   d.  Cisco eMTAs; and

   e.  Cisco STBs.

  23.  WideOpenWest and Knology use at least the following ARRIS products to implement the above services or comply with the above technologies:

   a.  ARRIS Media Gateways;

   b.  ARRIS Media Players;

   c.  ARRIS Media CMs; and

   d.  ARRIS eMTAs.

  24.  Suddenlink is a Delaware limited liability company with its principal place of business at 520 Maryville Centre Drive, Suite 300, St. Louis, Missouri 63141.  Suddenlink is an MSO in the United States, offering a variety of entertainment, information, and communications technologies and solutions to residential and commercial customers.

  25.  Suddenlink offers the following services to its customers:

   a.  High-Speed Internet;

   b.  Digital TV Services;

   c.  Digital Phone Services;

     d.       Level 3 VPN Services;

     e.       Video On Demand; and

     f.       Whole-House DVR Networks.

26.     Suddenlink uses equipment that complies with the following technologies, in whole or in part:

     a.       DOCSIS 2.0/3.0;

     b.       PacketCable 1.5;

     c.       Multi-Protocol Label Switching Protocols or Networks; and

     d.       Passive Optical Networks.

27.     Suddenlink uses at least the following Cisco products to implement the above services or comply with the above technologies:

     a.       Cisco CMTSs;

     b.       Cisco Routers;

     c.       Cisco STBs; and

     d.       ██████████

28.     Suddenlink uses at least the following ARRIS products to implement the above services or comply with the above technologies:

     a.       ARRIS CMTSs;

     b.       ARRIS CMs;

     c.       ARRIS eMTAs;

     d.       ██████████ and

     e.       ARRIS STBs.

29.     Cable One is a Delaware corporation with a principal place of business at 210 E. Earll Drive, Phoenix, Arizona 85012.  Cable One is an MSO in the United States, offering a variety of entertainment, information, and communications technologies and solutions to residential and commercial customers.

30.     Cable One offers the following services to its customers:

    a.     High-Speed Internet;

    b.     Digital TV Services;

    c.     Digital Phone Services; and

    d.     Whole-House DVR Networks.

31.     Cable One uses equipment that complies with the following technologies, in whole or in part:

    a.     DOCSIS 2.0/3.0; and

    b.     Multi-Protocol Label Switching Protocols or Networks.

32.     Cable One uses at least the following Cisco products to implement the above services or comply with the above technologies:

    a.     Cisco CMTSs.

33.     Cable One uses at least the following ARRIS products to implement the above services or comply with the above technologies:

    a.     ARRIS CMTSs; and

    b.     ARRIS eMTAs.

34.     Rockstar is a Delaware limited partnership.  On information and belief, Rockstar purports to have a principal place of business at 7160 North Dallas Parkway, Suite

No. 250, Plano, Texas 75024.  Rockstar identifies itself as a "patent licensing company" that exists for the sole purpose of enforcing various patents in its portfolio.

35.    Constellation is a Delaware limited liability company that purports to have its principal place of business at Legacy Town Center 1, 7160 North Dallas Parkway, Suite No. 250, Plano, Texas 75024.  Constellation is a wholly owned subsidiary of Rockstar, and a patent assertion entity.

36.    On information and belief, Constellation is a shell entity that is merely a front for Rockstar and its agents.  Rockstar formed Constellation one month before Constellation initiated two patent infringement lawsuits in the Eastern District of Texas.  The Northern District of California has ruled that Rockstar's formation of another entity under similar circumstances (MobileStar Technologies, LLC) "strongly suggest that Rockstar formed Mobilestar as a sham entity. . . ."  *Google Inc. v. Rockstar Consortium U.S. LP*, 2014 WL 1571807, at *4 (N.D. Cal. Apr. 17, 2014).

37.    John Garland is the Vice President of patent licensing at Rockstar and the president of Constellation.

38.    Non-party Spherix Corporation is a Delaware company with its principal place of business located at 7927 Jones Branch Drive Suite 3125, Tysons Corner, Virginia 22102.  Non-party Spherix Portfolio Acquisition II, Inc. is a Delaware company with, on information and belief, its principal place of business located at 7927 Jones Branch Drive Suite 3125, Tysons Corner, Virginia 22102.  Spherix Corporation and Spherix Portfolio Acquisition II, Inc. are collectively referred to herein as "Spherix."  Spherix is, among other things, a patent assertion entity.

39.     According to Spherix's November 19, 2013, 8-K SEC filing, on July 10, 2013, Spherix entered into an agreement with Rockstar pursuant to which Spherix purchased patents from Rockstar and promised, among other things, that "by August 2, 2013, [Spherix] shall enter into a written engagement with outside litigation counsel to initiate a patent litigation against at least one defendant within ninety (90) days of the Closing Date." Exhibit 10.1 of Spherix's November 19, 2013, SEC filing is attached as Exhibit 15.

40.     On January 6, 2014, *Bloomberg BusinessWeek* published an interview with Spherix CEO, Anthony Hayes.  Mr. Hayes stated that Rockstar owns Spherix voting securities with a value of 60 million dollars plus an interest in licensing revenue generated by the licensing of Spherix's patents.  He asserted that Spherix obtained from Rockstar "industry standard essential patents on a 20 billion [dollar] space, and that's just for 2012, that's not counting years back and not counting years forward, so the addressable market is exceptionally large" and that Rockstar "took sixty million dollars' worth of our stock for this deal."  He stated that he was "very grateful to be partnering with Rockstar."

41.     According to Spherix's January 2014 Investor Presentation, Rockstar is Spherix's biggest shareholder, owns 28.47% of Spherix, and has transferred over 100 patents to Spherix.  A copy of Spherix's January 2014 Investor Presentation is attached as Exhibit 16.

## JURISDICTION AND VENUE

42.     This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

43.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1337, 1338(a), 1367, 2201(a), and 2202.

44.     This Court has personal jurisdiction over Defendants because each is a limited partnership, limited liability company, or company residing in this District.

45.     Venue is proper in this District under 28 U.S.C. § 1391 because, among other reasons, Defendants reside and conduct business in this judicial district.

## NORTEL

46.     Prior to its dissolution in 2011, Nortel Networks Corporation was a leading supplier of communications and data networking products and services.   Nortel Networks Corporation and its subsidiaries (collectively, "Nortel") sold communications and data networking products and services to a host of commercial and governmental customers, including MSOs.

47.     By the time Nortel filed for bankruptcy in 2009, it had amassed approximately 8,500 U.S. and foreign patents and patent applications.   During its liquidation in 2011, Nortel packaged the vast majority of its patents and patent applications (approximately 6,000) for auction as a stand-alone patent portfolio (the "Nortel Patent Portfolio").   Nortel described the Nortel Patent Portfolio as covering, among many other things, "nearly every aspect of telecommunications."  (*See* Exhibit 17 at 1.)

## NORTEL'S PARTICIPATION IN SETTING
## COMMUNICATIONS AND DATA NETWORKING STANDARDS

### The Standard Setting Process

48.     Technical standards for communications and data networking technologies are usually developed through the efforts of standard development organizations ("SDOs"), whose membership includes industry participants, such as hardware manufacturers, software designers, and service providers.   The standards established by SDOs play a significant role in the development of communications and data networking technologies because they facilitate, for example, adoption of new technologies and the development of interoperable hardware.

49.     For example, IEEE 802.3 is a computer networking technology that consumers in the United States use every day.  IEEE 802.3 comprises IEEE standards for Ethernet, through which devices connect together on a local area network regardless of the device's hardware manufacturer.  That standard is ubiquitous because consumers demand interoperable technology.  Specific 802.3 standards, such as IEEE 802.3ac, implement additional Ethernet functionality.

50.     SDOs promulgate policies and procedures that control the disclosure and licensing of patents held by standard setting participants that may read on standards under consideration.  Those policies and procedures are typically set out in each SDO's bylaws or intellectual property rights policies ("IPR policies").

51.     IPR policies generally require participants to disclose patents that relate to the standards being considered by the SDO.  Those disclosures allow the SDO and its members to evaluate technologies with full knowledge of patent rights that may affect the industry-wide cost of adopting that technology as part of a new standard.

52.     At the time that a participant discloses patents that might relate to a standard being considered by an SDO, an IPR policy generally requires the participant to commit to provide licenses:  (1) to all parties interested in implementing the industry standard and (2) on fair, reasonable, and non-discriminatory ("F/RAND") or royalty-free terms.

53.     In the event the patent holder will not commit to those licensing terms, the SDO has the option to design around the disclosed patent or select for inclusion in the standard a different technology that does not read on the disclosed patent.

54.     As discussed above, a patent holder could demand excessive royalties, to the ultimate detriment of consumers, if it were permitted to ignore its licensing commitments.

<u>Nortel's Participation in SDOs and F/RAND or Royalty-Free Licensing Commitments</u>

55.     Before its bankruptcy, Nortel stated that it participated in "85 global, regional, and national standards organizations, forums and consortia, spanning IT and telecom," including many organizations in which Nortel held a leadership position.  (Exhibit 18 at 14.)

56.     The SDOs in which Nortel participated included the Institute of Electrical and Electronics Engineers ("IEEE"), the International Telecommunications Union ("ITU"), the Internet Engineering Task Force ("IETF"), the Alliance for Telecommunication Industry Solutions ("ATIS"), the European Telecommunications Standard Institute ("ETSI"), the World Wide Web Consortium ("W3C"), the Telecommunications Industry Association ("TIA"), and the Broadband Forum.

57.     In accordance with the established policies of at least the above-mentioned SDOs in which Nortel participated, Nortel bound several of the patents from the Nortel Patent Portfolio to be licensed on F/RAND or royalty-free terms.

58.     At all times relevant here, the IPR policies of SDOs in which Nortel participated required participants that owned standard-essential patents ("SEPs") to offer licenses to any party interested in practicing the standard on F/RAND or royalty-free terms.

59.     Eleven versions of the Standards Board Bylaws for the IEEE, dated December 1999 through February 2013, are attached as Exhibits 19-29.  Each version of those bylaws provides that:  (1) "IEEE standards may include the known use of essential patents and patent applications provided the IEEE receives assurance[s] from the patent holder," and (2) the assurance provided by the patent holder should be either a disclaimer of enforcement against the standard or a commitment to provide a license on F/RAND terms.  (Exhibits 19-29 at Bylaw 6.) The IEEE bylaws also provide that assurances are "irrevocable" until "the date of the standard's withdrawal."  (*Id.*)  The IEEE bylaws state that "[t]he Submitter [of any assurances] and all

Affiliates (other than those Affiliates excluded in a Letter of Assurance) shall not assign or otherwise transfer any rights in any Essential Patent Claims that are the subject of such Letter of Assurance that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in such Letter of Assurance." (*E.g.*, Exhibit 29 at 16.)

60.    Seven versions of the Guidelines for Implementation of the Common Patent Policy for ITU-T/ITU-R/ISO/IEC, dated July 1999 through April 2012, are attached as Exhibits 30-36.   Each version of those guidelines generally provides that participants are: (1) required to disclose known patents and patent applications that relate to standards under consideration and (2) encouraged to commit, by declaration, to license standard essential patents on F/RAND or royalty-free terms.  (*See* Exhibit 30 at §§ 2.4 and 2.5; Exhibit 35 at §§ 3 and 4.) Those guidelines provide two forms of licensing declarations that a participant might file:  (1) a specific licensing declaration with respect to specific standards and patents; and (2) a general licensing declaration with respect to any of the participant's patents and patent applications that are covered by the participant's standard submissions.  (*See* Exhibit 35 at Annexes 2 and 3.) Both licensing declarations allow for "an unrestricted number of applicants."  (*See id.*).

61.    The Common Patent Policy also states that "[i]n the event a Patent Holder participating in the work of the Organizations assigns or transfers ownership or control of Patents for which the Patent Holder reasonably believes it has made a license undertaking to the ITU/ISO/IEC, the Patent Holder shall make reasonable efforts to notify such assignee or transferee of the existence of such license undertaking.  In addition, if the Patent Holder specifically identified patents to ITU/ISO/IEC, then the Patent Holder shall have the assignee or

transferee agree to be bound by the same licensing commitment as the Patent Holder for the same patent." (*See id.* at 5).

62.     Five versions of the IPR policy for the IETF, dated March 1992 through March 2005, are attached as Exhibits 37-41.   Each version of that policy provides that participants are:  (1) required to disclose known patents and patent applications that they own, directly or indirectly, and that relate to standards under consideration and (2) encouraged to commit to license standard essential patents on F/RAND or royalty-free terms.  (*See* Exhibits 37 and 41 at § 6.)

63.     Four versions of the IPR policy for the 3GPP, dated July 1999 through October 2007, are attached as Exhibits 42-45.  Two versions of the IPR policy for ATIS, dated January 2006 through February 2012, are attached as Exhibits 46-47.  Five versions of the IPR policy for ETSI, dated November 2000 through April 2013, are attached as Exhibits 48-52.

64.     Nortel and its subsidiaries participated in drafting portions of the 3GPP specification concerning IP Multimedia Subsystems ("IMS"), including, for example, section 7.2 "IMS Multimedia Telephony and Supplementary Services (IMSTSS)" of 3GPP Release 8.  (*See* Exhibit 53).  The 3GPP IPR policies require that participant companies, such as Nortel, be members of certain member organizations, such as ATIS and ETSI, which obligate members to disclose certain patents related to specifications and standards to which they have contributed. On information and belief, Nortel made representations to ATIS and/or ETSI committing to license any of its patents that read on 3GPP IMS standards on F/RAND and/or royalty-free terms in connection with its participation in drafting the 3GPP IMS specifications.

65.     By specific letters of assurance ("LOAs") to each of the IEEE, ITU, and IETF, Nortel made at least 57 commitments to license SEPs on F/RAND or royalty-free terms.

Exhibit 54 lists patents from the Nortel Patent Portfolio that Nortel believed read on industry-standard technologies, the industry-standard technology on which Nortel believed that the patents read, the SDO to which Nortel bound the patents to be licensed on F/RAND or royalty-free terms, the entity that currently owns the patent, and the Web address at which Nortel's LOA can be found.

66.     As documented in Exhibit 55, Nortel provided an LOA for the '397 patent to the extent necessary to practice IEEE standard 802.3.  IEEE 802.3 is the IEEE standard for Ethernet.  Nortel agreed that "[i]n the event the [802.3] standard cannot be practiced without the use of the cited ['397] patent, Nortel Networks Limited agrees, upon written request, to grant a non-exclusive license under such patent on a non-discriminatory basis and on reasonable terms and conditions."  (*Id.*)

67.     As documented in Exhibits 56-57, Nortel provided LOAs agreeing to grant licenses to the '990 patent to the extent necessary to practice IEEE standards 802.3ac, 802.1ah, and 802.1Q.  802.3ac, 802.1ah, and 802.1Q are standards relating to Virtual Local Area Networks ("VLANs").  Nortel agreed that "[i]n the event the [802.3ac and 802.1Q] Standards cannot be practiced without the use of the cited ['990] patent, Nortel Networks agrees, upon written request, to grant a non-exclusive license under such patent on a non-discriminatory basis and on reasonable terms and conditions."  (Exhibit 57.)

68.     As documented in Exhibit 56, Nortel provided an LOA agreeing to grant licenses to the '990 patent and to U.S. Patent No. 6,111,876 to the extent necessary to practice IEEE standard 802.1ah, related to VLANs.  U.S. Patent No. 6,111,876 was reissued as the '999 patent.  Nortel agreed "to the extent any claims of either of [the '990 patent or '999 patent] is essential to practice the approved and adopted IEEE 802.1ah Standard, Nortel Networks Limited

declares its licensing position that it is willing, upon written request, to make available non-exclusive licenses under such patents on a non-discriminatory basis and under reasonable terms and conditions to comply with such resulting issued IEEE 802.1ah Standard." (Exhibit 56 at 1.)

69.    As documented in Exhibit 58, Nortel provided LOAs agreeing to grant licenses to U.S. Patent No. 6,111,876 before it was reissued as the '999 patent to the extent necessary to practice IEEE standard 802.1Q, relating to VLANs.  Nortel agreed that "[i]n the event the proposed standard is adopted and the standard cannot be practiced without the use of the cited ['999] patent, Nortel Networks Corporation agrees upon written request to grant a nonexclusive license under such patent on a nondiscriminatory basis and on reasonable terms and conditions." (Exhibit 58.)

70.    By general LOAs to each of the IEEE, ITU, IETF, ATIS, ETIS, TIA, and Broadband Forum SDOs, Nortel made general commitments to license on F/RAND or royalty-free terms all of its patents that are essential to implement particular standards or, in the case of the IETF, all of its patents that are essential to implement any IETF standard to which Nortel contributed.  Exhibit 59 lists the SDO to which Nortel made a general licensing commitment, the standard(s) for which Nortel made the general licensing commitment, an excerpt of the licensing commitment language, and the Web address at which Nortel's LOAs can be found.

71.    For example, as documented in Exhibit 60, Nortel made the following commitment to the IETF:  "Nortel Networks may seek patent rights on technology described in a document which Nortel Networks contributes for use in IETF standards discussions or standards track specifications.  If such patented technology is essential for the implementation, use, and distribution, of an IETF standard, Nortel Networks is willing to make available nonexclusive

18

licenses on fair, reasonable, and non-discriminatory terms and conditions, to such patent rights it owns, solely to the extent such technology is essential to comply with such IETF standard."

72.     Nortel employees had leadership roles in the IETF and, on information and belief, Nortel contributed to the IETF standards for RFC 4090, "Fast Reroute Extensions to RSVP-TE for LSP Tunnels," and RFC 4364, "BGP/MPLS IP Virtual Private Networks (VPNs)."

73.     As a further example, as documented in Exhibit 61, Nortel made a commitment to "grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use and sell implementations of [ITU standard G.984.3]."  G.984.3 is the standard for "Gigabit-capable Passive Optical Networks (G-PON): Transmission convergence layer specification."  Nortel agreed that "[t]he Patent Holder is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use and sell implementations of the above [G.984.3] document."  (*Id*. at 1.)

74.     As a further example, as documented in Exhibit 62, Nortel Networks made a commitment to "grant a nonexclusive license to Nortel patent claims that are essential for implementation of an existing IEEE 802.3 Standard on a nondiscriminatory basis and on reasonable terms and conditions . . . ."  The IEEE standard for "Ethernet-based Passive Optical Networks" ("EPON") is an existing IEEE 802.3 Standard.

75.     On information and belief, Nortel also acquired patents from other companies that were bound to commitments to license on F/RAND or royalty-free terms. Discovery will show the full extent to which patents in the Nortel Patent Portfolio were bound to F/RAND or royalty-free licensing commitments.

76.     Nortel benefitted in numerous ways from having its technologies adopted by SDOs for inclusion in standards.  For example, standardization of Nortel's technologies by SDOs led to wide adoption of those technologies in the communications industry. Standardization also increased the size of the market available to Nortel as a developer of telecommunications equipment.

77.     Industry participants, such as Plaintiffs, who use equipment that complies with an industry standard set by an SDO are implied licensees and/or intended third-party beneficiaries of F/RAND or royalty-free licensing commitments that a patent holder makes to the SDO.

78.     Plaintiffs regularly use equipment that complies with standards.  For example, as MSOs, Plaintiffs provide a variety of cable services, using equipment that complies with a large number of standards created by the IEEE, the ITU, the IETF, and other SDOs. Indeed, many of Plaintiffs' products and services rely on equipment that complies with dozens of different standards created by several SDOs.

<u>DOCSIS and PacketCable Royalty-Free Licensing Encumbrances On
Certain Patents in the Nortel Patent Portfolio</u>

79.     Nortel and/or its affiliates also committed to provide royalty-free licenses to certain patents in the Nortel Patent Portfolio that concern the Data Over Cable Service Interface Specification ("DOCSIS") standards and related PacketCable standards to Cable Television Laboratories, Inc. ("CableLabs"), and gave CableLabs the right to grant royalty-free sublicenses to implementers of the DOCSIS or PacketCable standards.

80.     CableLabs is a non-profit research and development consortium that is dedicated to pursuing new cable communications technologies and helping its MSO members integrate those technical advancements into their business objectives.

81. In 1998, CableLabs created a royalty-free pool for intellectual property rights essential to the DOCSIS standards. Companies that signed a DOCSIS License Agreement ("DOCSIS Licensors") granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by it or its affiliates essential for compliance with current or future versions of DOCSIS ("DOCSIS Standards"). In return, DOCSIS Licensors obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense to the extent necessary for compliance with the DOCSIS Standards.

82. Cisco became a DOCSIS Licensor in 1998. A copy of the DOCSIS License Agreement, dated October 1998 and signed by Cisco, is attached as Exhibit 63.

83. On information and belief, ARRIS became a DOCSIS Licensor in 1998.

84. A copy of a letter memorializing ARRIS's Licensor status, dated September 9, 2003, and signed by ARRIS, is attached as Exhibit 64.

85. Both Cisco and ARRIS were granted licenses to the DOCSIS patent pool and continue to be DOCSIS Licensors in good standing today. As new versions of DOCSIS have been released, Cisco and ARRIS have been granted sublicenses that cover those new versions pursuant to the terms of the 1998 DOCSIS license agreement. Accordingly, Cisco and ARRIS are licensed to practice at least DOCSIS versions 1.0, 2.0, and 3.0.

86. LANcity Corp. ("LANcity"), an affiliate of Nortel, became a DOCSIS Licensor in or about 1998. A copy of the DOCSIS License Agreement, dated July 2, 1998 and signed by LANcity, is attached as Exhibit 65.

87. At the time LANcity became a DOCSIS Licensor, it had the right to license the '474 patent.

88.     Bay Networks ("Bay"), an affiliate of Nortel, became a DOCSIS Licensor in or about 1998.  A copy of a letter agreement between Bay and CableLabs whereby Bay agrees to sign the DOCSIS License Agreement and agrees to join the patent pool for DOCSIS Version 1.1, dated July 2, 1998 and signed by Bay, is attached as Exhibit 66.

89.     At the time Bay became a DOCSIS Licensor, it had the right to license the '197 patent.

90.     On information and belief, Nortel became a DOCSIS Licensor in or around 1998.

91.     Nortel held itself out as a DOCSIS Licensor starting at least as early as 1998.  In an October 14, 1998, letter to CableLabs, for example, Nortel equated itself with Bay Networks, who had already signed the DOCSIS license agreement by describing itself as "Nortel Networks (Bay Networks)."  Nortel also stated:  "Nortel Networks, and the other Licensors, have set aside parochial interests and contributed their intellectual property to create a standard that would spawn a major new business for cable operators and a level playing field for vendors."  A copy of the letter is attached as Exhibit 67.

92.     In the early 2000s, Nortel identified itself as a DOCSIS Licensor by advertising its products as having received DOCSIS certifications.  Copies of two such advertisements are attached as Exhibits 68 and 69.  At the time Nortel became a DOCSIS Licensor, it had the right to license the '474, '197, '893, and '253 patents.

93.     By becoming DOCSIS Licensors, Nortel, LANcity, and/or Bay Networks contributed at least the '474, '197, '893, and '253 patents to the DOCSIS patent pool.

94.     CableLabs also created a royalty-free pool for intellectual property rights essential to the PacketCable standards, which were built on top of the DOCSIS Standards.

Companies that signed a PacketCable License Agreement ("PacketCable Licensors") granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by it or its affiliates essential for compliance with current or future versions of PacketCable ("PacketCable Standards").   In return, PacketCable Licensors obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense to extent necessary for compliance with the PacketCable Standards.

95.     Cisco became a PacketCable Licensor on March 2, 1999.  A copy of the PacketCable License Agreement, dated March 2, 1999, and signed by Cisco, is attached as Exhibit 70.

96.     ARRIS became a PacketCable Licensor on March 5, 1999.  A copy of the PacketCable License Agreement, dated March 5, 1999, and signed by ARRIS, is attached as Exhibit 71.

97.     Both Cisco and ARRIS have been granted licenses to the PacketCable patent pool and continue to be PacketCable Licensors in good standing today.  As new versions of PacketCable have been released, Cisco and ARRIS have been granted sublicenses that cover those new versions.  Accordingly, Cisco and ARRIS are licensed to practice at least PacketCable versions 1.0 and 1.5.

98.     LANcity became a PacketCable Licensor in or about 1998.  A copy of the PacketCable License Agreement, dated October 9, 1998, and signed by LANcity, is attached as Exhibit 72.

99.     On information and belief, at the time LANcity became a PacketCable Licensor, it had the right to license the '474 patent.

100.    On information and belief, Bay became a PacketCable Licensor in or about 1998.

101.    At the time Bay became a PacketCable Licensor, it had the right to license the '197 patent.

102.    Nortel Network Cable Solutions, Inc. ("Nortel Cable"), an affiliate of Nortel, became a PacketCable Licensor in or about 2000.  A copy of the PacketCable License Agreement, dated February 29, 2000, and signed by Nortel Cable, is attached as Exhibit 73. A copy of the PacketCable IPR Signatories is attached as Exhibit 74.

103.    At the time LANcity, Bay Networks, and Nortel Cable became PacketCable Licensors, Nortel was an affiliate of LANcity, Bay Networks, and Nortel Cable.

104.    On information and belief, Nortel signed a PacketCable License in 1998 and thus explicitly agreed to license its patents.

105.    In the early 2000s, Nortel identified itself as a PacketCable Licensor by advertising its products as having received PacketCable certifications.  A copy of an advertisement from Nortel Networks from July 30, 2003, is attached as Exhibit 75.

106.    At the time LANcity, Bay Networks, and Nortel Cable became PacketCable Licensors, Nortel had the right to license the '474, '197, '893, and '253 patents.

107.    Plaintiffs purchase hardware and software from Cisco that comply, in whole or in part, with DOCSIS and PacketCable, including:

      a.      Cisco CMTSs;

      b.      Cisco CMs;

      c.      Cisco eMTAs; and

      d.      Cisco Set-Top Boxes ("STBs").

24

108. Plaintiffs purchase hardware and software from ARRIS that comply, in whole or in part, with DOCSIS and PacketCable, including:

    a. ARRIS CMTSs;

    b. ARRIS CMs;

    c. ARRIS eMTAs; and

    d. ARRIS STBs.

109. According to the DOCSIS license agreement, the DOCSIS agreements were created to "obtain rights to a pool of intellectual property associated with [DOCSIS], which define interface requirements for equipment involved in the delivery of data over coax and hybrid fiber/coax networks and to sublicense such right on a royalty-free basis." Therefore, on information and belief, any other vendors that Plaintiffs purchase hardware and software from are DOCSIS and PacketCable Licensors.

110. Pursuant to the DOCSIS and PacketCable License Agreements, Plaintiffs are sublicensed to the Nortel Patent Portfolio to the extent necessary to practice the DOCSIS and/or PacketCable Standards.

111. Rockstar has asserted that the use of DOCSIS 2.0 and 3.0 infringes the '474, '197, '893, and '253 patents.

112. Rockstar has asserted that the use of PacketCable 1.5 infringes the '474, '197, '893, and '253 patents.

113. By representing itself as a "Licensor" to the DOCSIS and/or PacketCable License Agreements, Nortel obtained the benefit of joining the DOCSIS and/or PacketCable patent pools. Nortel and its subsidiaries benefitted from joining DOCSIS and/or PacketCable

because they were able to develop, market, and sell products that were compatible with DOCSIS and/or PacketCable Standards.

## ROCKSTAR ACQUIRES THE NORTEL PATENTS AND, TOGETHER WITH ITS SUBSIDIARIES AND PARTNERS, ASSERTS THEM AGAINST PLAINTIFFS

114.    On January 14, 2009, Nortel filed for bankruptcy protection in the United States, Canada, and the United Kingdom.

115.    During bankruptcy proceedings, Nortel auctioned various business units and other assets.  The last major asset to be liquidated in the bankruptcy proceedings was the Nortel Patent Portfolio.

116.    The Nortel Patent Portfolio consisted of approximately 6,000 U.S. patents, foreign patents, and patent applications, and related to a wide range of technologies including wireless, wireless 4G, data networking, optical, voice, Internet, and semiconductors.

117.    A consortium of companies, including Apple and Microsoft, won the auction and acquired the Nortel patent portfolio, which included the Asserted Patents.

118.    When the consortium of companies acquired the Nortel patent portfolio from the Nortel bankruptcy estate, based on the terms of the bankruptcy sale order, the consortium assumed certain encumbrances that included commitments made to SDO and industry groups.  As a result, they were obligated to offer licenses in accordance with Nortel's F/RAND and royalty-free licensing commitments to SDOs, and the CableLabs DOCSIS and PacketCable agreements.

119.    After the consortium of companies won the auction for the Nortel patent portfolio, some of the patents from the Nortel patent portfolio were transferred to Rockstar.

120.    In an interview with *Wired* magazine, published on May 21, 2012, John Veschi, the CEO of Rockstar, stated that "[p]retty much anybody out there is infringing, I would

think. It would be hard for me to envision that there are high-tech companies out there that don't use some of the patents in our portfolio." With respect to commitments given by the companies that own Rockstar to license Nortel patents under F/RAND or royalty-free terms, Mr. Veschi stated: "[w]e are separate, [t]hat does not apply to us." At the time of the interview, Rockstar owned not only the patents currently owned by Rockstar, but also asserted patents currently alleged to be owned by Constellation and Spherix. A copy of the May 21, 2012, *Wired* article is attached as Exhibit 76.

121. Rockstar subsequently transferred some of the patents to its subsidiaries, Bockstar and Constellation, and to its partner, Spherix. Through a campaign to enforce the Nortel patent portfolio, Rockstar, directly and through its subsidiary, Constellation, has accused several Cisco customers in the communications, cable and/or wireline industries of infringing certain patents obtained from the Nortel patent portfolio.

122. Through a campaign to enforce the Nortel Patent Portfolio, Rockstar has accused Plaintiffs of infringing certain patents obtained from the Nortel Patent Portfolio.

123. Additionally, Rockstar, through its subsidiary Bockstar, filed suit against Cisco, alleging that Cisco infringes certain patents obtained from the Nortel Patent Portfolio. A copy of the complaint filed by Bockstar against Cisco is attached as Exhibit 77.

124. Additionally, Rockstar's partner, Spherix, filed suit against Cisco, alleging that Cisco infringes certain patents obtained from the Nortel Patent Portfolio. A copy of the complaint filed by Spherix against Cisco is attached as Exhibit 78.

125. Additionally, after Constellation and Rockstar accused several of ARRIS's customers of patent infringement, including some of the Plaintiffs, ARRIS filed a declaratory

judgment suit against Constellation and Rockstar.  A copy of the complaint filed by ARRIS against Constellation and Rockstar is attached as Exhibit 79.

<u>Rockstar Asserts That Charter, Knology, WOW, Suddenlink, and Cable One<br>Broadly Infringe Its "Patent Estate"</u>

126.    In patent assertion letters to Charter, Knology, WOW, Suddenlink, and Cable One, Rockstar alleged to each of those companies that:  (1) Rockstar owns thousands of patents and patent applications, "most notably in communications and networking," (2) Rockstar believes that they require a "license to [its] patents" or its "patent estate," and (3) Rockstar believes that those companies offer "certain products and services that infringe patents owned by Rockstar."  (*See* Exhibits 80-84.)

127.    In the patent assertion letters to those companies, Rockstar identifies "exemplary patents that inform [its] opinion," but cautions the companies to "keep in mind that the [exemplary] patents [] are part of a much larger portfolio."  Rockstar also purports to inform each of those companies that it "has an affirmative responsibility to ensure that it has secured all necessary patent rights to sell the products and services listed above, *as well as others that might be infringing Rockstar's intellectual property*."  (*See* Exhibits 80-84 (emphasis added).)

128.    Similarly, Rockstar sent a patent assertion letter to Time Warner Cable, Inc. ("TWC") the day after Constellation filed a patent infringement lawsuit against TWC.  In that patent assertion letter, Rockstar informed TWC that Constellation "has a large portfolio of patents that are relevant to the telecommunications and cable industry," and that "Constellation believes that TWC has built the fundamental aspects of its business on inventions from the Nortel Family," including certain exemplary patents.  In that letter, Rockstar also invited TWC to participate in "licensing discussions for all or part of Constellation's portfolio."  (*See* Exhibit 85.)

129.    TWC objected to Rockstar's misleading and overly broad allegations in a response letter dated December 26, 2013.  (Exhibit 86.)  In that letter, TWC also expressed disappointment that:  (1) Rockstar and Constellation filed a patent infringement lawsuit against TWC before discussing the patents-in-suit with TWC (especially with respect to any allegedly standard essential patents) and (2) Rockstar and Constellation unilaterally withdrew from any licensing negotiations.

130.    By those patent assertion letters, Rockstar accuses any number of each company's products and services of infringing a "patent estate" that consists of thousands of patents.

131.    By those patent assertion letters, Rockstar suggests that each company has the burden of accusing itself of patent infringement, apparently by sifting through thousands upon thousands of Rockstar's patents and "ensur[ing] that it has secured all necessary patent rights."  Even worse, Rockstar suggests that each company make those determinations while the size and composition of Rockstar's patent portfolio is in flux.  Rockstar constantly shifts patents to and among various wholly-owned subsidiaries and spin-offs so, at any given time, the patent assignment records do not accurately reflect who owns what.

132.    Rockstar's patent assertion letters are bad-faith threats with baseless allegations that potentially every product and service each company provides to its customers infringes all of Rockstar's patents.  Rockstar leaves it to each company to figure out what patents Rockstar owns and to accuse itself of infringing specific patents.

133.    In those patent assertion letters, Rockstar either:  (1) knows but conceals which Rockstar patents are infringed by specific products or services offered by each company or (2) does not know which Rockstar patents are infringed by specific products or services

offered by each company, but nonetheless accuses any number of products and services of infringing any number, if not all, of the patents from Rockstar's "patent estate."

134.    In either case, Rockstar has cast a broad patent infringement cloud over each company's products and services, including products and services that its suppliers, such as ARRIS and Cisco, provide.

<u>Rockstar Asserts Its Patents Against Knology and WOW</u>

135.    On March 13, 2012, Rockstar wrote Knology and stated that "our analysis reveals that Knology, Inc. is currently offering certain products and services that infringe patents owned by Rockstar."   As examples of Knology's alleged infringement, Rockstar accused Knology High Speed Internet and DOCSIS 3.0 of infringing the '474 and '197 patents.  A copy of Rockstar's March 13, 2012, letter to Knology is attached as Exhibit 81.

136.    On October 29, 2012, Rockstar wrote WOW and stated that "our analysis reveals that WOW and Knology, are currently offering certain products and services that infringe patents owned by Rockstar."   As examples of WOW's alleged infringement, Rockstar accused, among other things, embedded multimedia terminal adapters (eMTAs) and PacketCable 1.5 of infringing the '893 and '253 patents, and DOCSIS 2.0 and 3.0 of infringing the '474 and '197 patents.  A copy of Rockstar's October 29, 2012, letter is attached as Exhibit 82.

<u>Rockstar Asserts Its Patents Against Cable One</u>

137.    On March 13, 2012, Rockstar wrote Cable One and stated that "our analysis reveals that Cable ONE, Inc. is currently offering certain products and services that infringe patents owned by Rockstar."   As examples, Rockstar accused Cable One High Speed Internet Service, DOCSIS 2.0, Cable One High Speed Internet with Elite and Preferred services, and DOCSIS 3.0 of allegedly infringing the '474 and '197 patents.  A copy of Rockstar's March 13, 2012, letter to Cable One is attached as Exhibit 84.

138.    Rockstar later identified the use or sale of cable modems, eMTAs, eRouters, edge routers, CMTS equipment, and related software as allegedly infringing the '893 and '253 patents based on alleged implementation of DOCSIS 2.0/3.0, OpenCable (Tru2way), Packet Cable 1.5, and eRouter.

Rockstar Asserts Its Patents Against Suddenlink

139.    On March 13, 2012, Rockstar wrote Suddenlink, stating that "our analysis reveals that [Suddenlink] is currently offering certain products and service that infringe patents owned by Rockstar."   As examples, Rockstar accused Suddenlink High Speed Internet, Suddenlink Business Internet, and DOCSIS 3.0 of infringing the '474 and '197 patents.  A copy of Rockstar's March 13, 2012, letter to Suddenlink is attached as Exhibit 83.

Rockstar Asserts Its Patents Against Charter

140.    On March 13, 2012, Rockstar wrote Charter stating that "our analysis reveals that Charter Communications, Inc. is currently offering certain products and service that infringe patents owned by Rockstar."   As examples, Rockstar accused Charter TV Multiroom DVR service and MOCA of infringing the '879 patent; Charter Business Optical Ethernet Service and VLAN of infringing the '999 and '990 patents; GigE, Charter Business Fiber Internet, and 10GigE of infringing the '397 patent; and Charter Internet Service and DOCSIS 3.0 and 2.0 of infringing the '474 and '197 patents.  A copy of Rockstar's March 13, 2012, letter to Charter is attached as Exhibit 80.

141.    On information and belief, Rockstar's assertions against GigE, Charter Business Fiber Internet, and 10GigE are based on the IEEE 802.3 standard, which includes specification for GigE and 10GigE.

142.    On information and belief, Rockstar's assertions against VLAN are based on the IEEE 802.1ah, 802.1ac, and 802.1Q standards, relating to virtual local area networks ("VLANs").

143.    On November 8, 2013, Rockstar emailed Charter stating "please find 3 additional Rockstar patents that are used with the indicated Charter service and products." Rockstar accused Charter Business Level 3 VPN Service (BGP/MPLS) of infringing the '862 patent, Charter Phone Service and Charter supplied MTA's of infringing the '893 patent, and Charter Phone Services and Charter Internet Services (allegedly using PacketCable 1.5 and E-MTAs) of infringing the '253 patent.  A copy of Rockstar's November 8, 2013, email to Charter is attached as Exhibit 87.

144.    On information and belief, Rockstar's assertions against Charter Business Level 3 VPN Service (BGP/MPLS) are based on one or more IETF standards, including RFC 4364, titled BGP/MPLS IP Virtual Private Networks (VPNs).

145.    Despite asserting the '999 and '990 patents against Charter in 2012, Rockstar now claims that Spherix owns the '999 and '990 patents.  *Bockstar Technologies LLC v. Cisco Systems, Inc.*, C.A. No. 13-2020-SLR (D. Del.), D.I. 20 at n. 7 (Rockstar's March 18, 2014, Opening Brief In Support Of Rockstar Consortium US LP And Constellation Technologies LLC's Motion To Dismiss Cisco's Counterclaims).

146.    According to Spherix's April 2014 Investor Presentation, Spherix's patent portfolio includes SEPs relating to "aspects of IEEE standards 802 and virtual LAN (VLAN) tagging on a network."  A copy of Spherix's April 2014 Investor Presentation is attached as Exhibit 88.

## CONSTELLATION BRINGS SUIT AGAINST TIME WARNER CABLE AND WINDSTREAM

147.    Constellation brought patent suits against MSOs Time Warner Cable Inc. ("TWC") and Windstream Communications, Inc. ("Windstream"), both of who provide services similar to those that Plaintiffs provide.

### Constellation Brings A Patent Suit Against TWC

148.    TWC is an MSO that provides similar services to those that Plaintiffs provide, including cable television, phone, and high-speed internet services.

149.    On December 11, 2013, Rockstar assigned the '649, '299, '048, '917, '879, and '389 patents to Constellation.

150.    On the same day, Constellation brought suit against TWC for alleged patent infringement of the '649, '299, '048, '917, '879, and '389 patents.   A copy of Constellation's complaint against TWC is attached as Exhibit 89.

151.    Constellation has since served infringement contentions against TWC. The cover pleading for Constellation's infringement contentions is attached as Exhibit 90. Among other things, Constellation's infringement contentions accused TWC's switched digital video, video on demand, and IP cable television instrumentalities of infringing the '649 and '299 patents; TWC's IP multimedia subsystem ("IMS") of infringing the '389 patent; TWC's MPLS instrumentalities of infringing the '048 and '917 patents; and TWC's point-to-multiple access networks, such as Ethernet Passive Optical Networks ("E-PON") and whole-house DVR networks, of infringing the '879 patent.

152.    On information and belief, Constellation's infringement contentions against TWC's IMS instrumentalities are based on IMS, as standardized by various 3GPP Releases.

33

153.   On information and belief, Constellation's infringement contentions against TWC's use of EPON are based on EPON, as standardized by the IEEE 802.3 standard.

154.   Constellation's infringement contentions accused TWC's MPLS instrumentalities of infringing the '048 and '917 patents by using Fast Reroute technology.

155.   On information and belief Constellation's infringement contentions against Fast Reroute are based on the IETF standard 4090, titled "Fast Reroute Extensions to RSVP-TE for LSP Tunnels."

<u>Constellation Brings A Patent Suit Against Windstream</u>

156.   Windstream Communications ("Windstream") is an MSO that provides similar services to those that Plaintiffs provide, including cable television, phone, and high-speed internet services.

157.   On December 11, 2013, Rockstar assigned the '879 and '917 patents to Constellation.

158.   On the same day, Constellation brought suit against Windstream asserting infringement of, among other patents, the '917 patent for Windstream's use of MPLS networks and the '879 patent for point-to-multipoint access networks, such as Gigabit-capable Passive Optical Networks ("G-PON").   A copy of Constellation's complaint against Windstream is attached at Exhibit 91.

159.   Constellation has since served infringement contentions against Windstream.   The cover pleading for Constellations' infringement contentions is attached as Exhibit 92.

160.   On information and belief, Constellation's infringement contentions against Winstream's use of G-PON are based on G-PON, as standardized by the ITU G.984.3 standard.

161.   On information and belief, Defendants have asserted their patents against other MSOs.

162.   Defendants' allegations of infringement, threats of litigation, and lawsuits have cast a cloud of uncertainty over Plaintiffs' business requiring the declaratory relief sought in this Complaint.

163.   Defendants' strategy of entering into non-disclosure agreements have concealed the scope of Defendants' assertions and further cast a cloud of uncertainty over Plaintiffs' business requiring the declaratory relief sought in this Answer.

164.   These activities by or on behalf of Rockstar create an immediate, definite, concrete and substantial dispute regarding the alleged infringement by Plaintiffs of patents in Rockstar's portfolio.

## WHILE ASSERTING PATENTS AGAINST PLAINTIFFS, ROCKSTAR AND CONSTELLATION BREACHED F/RAND AND ROYALTY-FREE LICENSING OBLIGATIONS

165.   After receiving assertion letters from Rockstar, Plaintiffs opened a dialogue with Rockstar in an attempt to learn more about the patent portfolio and, if necessary, to negotiate a license to aspects of the portfolio.

166.   Rockstar refused these overtures and demanded that each company execute a non-disclosure agreement as a condition precedent to receiving information concerning the patents, Rockstar's assertions, or discussing the terms of a license.

167.   Restrictions demanded by Rockstar in the non-disclosure agreement provided to Plaintiffs required that targeted companies agree to restrict disclosure of discussions with Rockstar.  In certain instances, Rockstar demanded that one or more of the targeted companies refrain from disclosing the substance of licensing negotiations to any third party for any purpose whatsoever.

168.    Other accused infringers, including Charter, declined to execute Rockstar's proposed agreement and were excluded from meaningful licensing negotiations. Charter was left with no other option but to sue or be sued.

169.    For accused infringers that signed non-disclosure agreements it quickly became apparent that Rockstar had no intention of honoring its F/RAND or royalty-free licensing obligations or negotiating a license to its portfolio in good faith.

170.    During these negotiations, Rockstar used the size of its newly-acquired portfolio, coupled with the threat of serial litigation, to demand exorbitant licensing fees – fees that do not comport with the royalty-free or F/RAND terms under which Rockstar was obligated to license the SEPs in its portfolio.

171.    In addition to demanding exorbitant licensing fees, Rockstar also used the sheer size of its portfolio to preclude accused infringers from substantively evaluating the merits of Rockstar's infringement allegations.

172.    Rockstar accomplished this by refusing to identify for accused infringers the full list of patents they were purportedly infringing.  Instead, Rockstar provided only what it deemed "exemplary" patents from its portfolio for evaluation.  This left accused infringers with no way to meaningfully evaluate Rockstar's infringement allegations, to refute its allegations of infringement, or to determine the actual value of the relevant patents within Rockstar's portfolio.

173.    Relying on the substantial breadth of its portfolio, Rockstar also intimidated accused infringers by suggesting that failure to take a license to Rockstar's entire portfolio would place a cloud of uncertainty over their business and would, ultimately, result in those parties being subjected to an endless cycle of patent enforcement through serial litigation.

Rockstar's recent assignments of patents to Constellation, and sale of patents to Spherix with threats to sell more patents, constitute actions in furtherance of these threats.

174.    Following up on its threats, since October 2013, Defendants have filed multiple lawsuits in which they accuse various technology companies of infringing patents within the portfolio.  These recent enforcement activities by Defendants make the threat of serial litigation all the more concerning for Plaintiffs.

175.    Rockstar ultimately threatened to file or did file patent infringement actions against Plaintiffs, other MSOs, and their vendors based on several SEPs encumbered by royalty-free and F/RAND obligations, including:  the '397, '879, '862, '990, '999, '474, '197, '893, '253, '917, and '048 patents (the "Asserted SEPs").

176.    Rockstar also used its non-disclosure agreements to preclude Plaintiffs from notifying their device manufacturers of the details of Rockstar's allegations of infringement—a necessary prerequisite to obtaining indemnification.  This strategy interfered with Plaintiffs' contractual rights and increased Plaintiffs' potential liability.  Rockstar used this strategy in an effort to coerce Plaintiffs, and others, to take a license to Rockstar's entire portfolio, including to patents not relevant to those parties' products and/or services, as well as to patents that were already licensed by Plaintiffs' vendor(s).

177.    By prohibiting communications between device manufacturers and service providers, Rockstar sought to increase its already exorbitant licensing fees—allowing it to try to license device manufacturers and service providers separately.

178.    Rockstar also used these restrictive non-disclosure agreements to prohibit communications between various participants in the communications industries.  Rockstar's actions were intended to prevent Plaintiffs from ensuring that any license negotiated would be on

F/RAND terms, facilitating Rockstar's efforts to extract fees in excess of those it was entitled to pursuant to its royalty-free or F/RAND licensing obligations.

179.    Based on the foregoing, Rockstar required parties to execute non-disclosure agreements, not in a good-faith attempt to protect both parties during negotiation, but rather, to erect a wall that would allow Rockstar to conduct its improper licensing campaign with less risk of exposure – to other targets, or antitrust authorities – and therefore less chance of being held accountable for violating its royalty-free or F/RAND obligations.

180.    Using its inappropriate licensing strategy, Rockstar has refused to engage in good faith negotiation as required pursuant to its obligations to license its patents on royalty-free or F/RAND terms.

<u>Ownership of Rockstar Asserted Patents</u>

181.    As described above, Rockstar has insisted that Plaintiffs and other MSOs infringe at least the '397, '990, '999, '879, '862, '048, '917, '389, '474, '197, '893, '253, '649, and '299 patents, and has demanded that each pay for a license to those patents.

182.    During the discussions set forth above, Rockstar represented that it was the owner of and/or had the authority to negotiate licenses in connection with all of the patents in its portfolio.  Rockstar, to this day, continues to communicate with one or more of Plaintiffs in an effort to license the entire portfolio of patents.

183.    Constellation alleges that it is now the assignee of one or more of the patents that were originally included in the Rockstar portfolio, and that it owns all rights title, and interest in those patents, including at least the '474, '862, '197, '649, '893, '253, '389, '048, '879, '917, and '299 patents.

184.    On information and belief, Constellation is a shell entity that is merely a front for Rockstar and its agents.  For example, as described above, John Garland is the Vice President of patent licensing at Rockstar and the president of Constellation.  Furthermore, Rockstar formed Constellation one month before Constellation initiated two patent infringement lawsuits in the Eastern District of Texas.  The Northern District of California has ruled that Rockstar's formation of another entity under similar circumstances (MobileStar Technologies, LLC) "strongly suggest that Rockstar formed Mobilestar as a sham entity. . . ."  *Google Inc. v. Rockstar Consortium U.S. LP*, 2014 WL 1571807, at *4 (N.D. Cal. Apr. 17, 2014).

185.    By engaging in negotiations to license not only its own patents but also those it has apparently assigned to Constellation, Rockstar representatives were purporting to act not only on behalf of Rockstar, but also on behalf of Constellation.

186.    In a recent press release, non-party Spherix also claims to be the assignee of a substantial number of patents that were originally part of the Rockstar portfolio.  A copy of Spherix's press release is attached as Exhibit 93.  For instance, Spherix alleges that it is now the assignee of the '990 and '999 patents, and that it owns all rights, title, and interest in those patents.

187.    By engaging in negotiations to license not only its own patents but also those it has apparently assigned to Spherix, Rockstar representatives were purporting to act not only on behalf of itself, but also on behalf of Spherix.

188.    Moreover, as described above, Spherix is Rockstar's partner, with Rockstar owning 60 million dollars in Spherix's voting securities and an interest in revenue generated by the licensing of Spherix's patents.  Rockstar is also Spherix's biggest shareholder, owning 28.47% of Spherix.  Furthermore, pursuant to the Rockstar-Spherix patent purchase

agreement, Rockstar required Spherix to enter into a written engagement with outside litigation counsel to initiate patent litigations within 90 days of the agreement. Rockstar maintains substantial control over Spherix, including approval and veto rights over litigation, its funding, and choice and terms of engagement of outside litigation counsel.

## COUNT I – BREACH OF CONTRACT WITH THE IEEE
## TO LICENSE THE '397 PATENT ON F/RAND OR ROYALTY-FREE TERMS
### (AGAINST ROCKSTAR)

189.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

190.    Nortel provided an LOA agreeing to grant F/RAND or royalty-free licenses to the '397 patent to the extent necessary to practice IEEE standard 802.3. (*See* Exhibit 55.) IEEE 802.3 is the IEEE standard for Ethernet.

191.    Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in the LOAs submitted to the IEEE and in accordance with IEEE's IPR policies.

192.    IEEE's policies, as amended over time, constitute a contractual commitment to offer licenses to SEPs in accordance with the terms of those policies. By participating in the IEEE, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer licenses to SEPs on F/RAND or royalty-free terms.

193.    As industry participants that would potentially implement the standards established by the IEEE, Plaintiffs and their vendors are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the IEEE.

194.    F/RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors-in-interest to the Nortel Patent Portfolio, Rockstar is obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

195.    As a result, Rockstar is obligated to offer F/RAND or royalty-free licenses to Plaintiffs for the '397 patent to the extent necessary to practice the IEEE 802.3 standard.

196.    Rockstar has accused Plaintiffs of infringing the '397 patent based on Plaintiffs' alleged use of GigE and 10GigE, as standardized by IEEE 802.3.

197.    By accusing Plaintiffs of infringing the '397 patent based solely on Plaintiffs' alleged use technologies standardized in the IEEE 802.3 standard, Rockstar has alleged that the '397 patent is essential to the use of the IEEE 802.3 standard.

198.    Rockstar has breached its express and implied commitments to license the '397 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license alleged SEPs to Plaintiffs or their vendors on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Plaintiffs or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.    Requiring Plaintiffs and third-parties, including Plaintiffs' vendors, to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.    Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Plaintiffs, that have adopted well-established digital telecommunication standards; and

f.      Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to all industry participants on nondiscriminatory terms and conditions.

199.    Through the foregoing acts, Rockstar breached the express and implied commitments Nortel and other entities made to the IEEE to license the '397 patent on F/RAND or royalty-free terms.

200.    As a result of those breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

201.    As a remedy for those breaches, to the extent the '397 patent is a SEP that is valid, enforceable, and infringed, Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar of its obligations to provide licenses to the '397 patent on F/RAND or royalty-free licensing terms.

202.    As an additional remedy for Rockstar's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

## COUNT II – BREACH OF CONTRACT WITH THE ITU AND IEEE TO LICENSE THE '879 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

203.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

204.    Nortel provided an LOA agreeing to grant licenses to patents essential to ITU standard G.984.3, titled "Gigabit-capable Passive Optical Networks (G-PON): Transmission convergence layer specification." (*See* Exhibit 61.)

205.     Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in each LOA submitted to the ITU and in accordance with the ITU's IPR policies.

206.     The ITU's policies, as amended over time, constitute a contractual commitment to offer licenses to SEPs in accordance with the terms of those policies.  By participating in the ITU, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer licenses to SEPs on F/RAND or royalty-free terms.

207.     As industry participants that would potentially implement the standards established by the ITU, Plaintiffs and their vendors are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the ITU.

208.     Nortel provided a letter of assurance to the IEEE agreeing to "grant a nonexclusive license to Nortel patent claims that are essential for implementation of an existing IEEE 802.3 Standard on a nondiscriminatory basis and on reasonable terms and conditions . . . ." (*See* Exhibit 62).  EPON is an existing IEEE 802.3 standard.

209.     Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in each LOA submitted to the IEEE and in accordance with the IEEE's IPR policies.

210.     The IEEE's policies, as amended over time, constitute a contractual commitment to offer licenses to SEPs in accordance with the terms of those policies.  By participating in the IEEE, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer licenses to SEPs on F/RAND or royalty-free terms.

211.    As industry participants that would potentially implement the standards established by the IEEE, Plaintiffs and their vendors are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the IEEE.

212.    F/RAND and royalty-free encumbrances are irrevocable and run with the patents, and, as successors-in-interest to the Nortel Patent Portfolio, Rockstar and Constellation are obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

213.    As a result, Rockstar and Constellation are obligated to offer F/RAND or royalty-free licenses to Plaintiffs for the '879 patent to the extent necessary to practice G-PON, as standardized in ITU standard G.984.3, and EPON, as standardize by IEEE 802.3.

214.    Rockstar, on behalf of its subsidiary, Constellation, has accused Windstream of infringing the '879 patent based on its use of E-PON, and has accused Time Warner Cable of infringing the '879 patent based on its use of GPON.

215.    By accusing Time Warner Cable and Windstream of infringing the '879 patent based on their use of technologies standardized in ITU standard G.984.3 or IEEE standard 802.3, Rockstar and Constellation have alleged that the '879 patent is essential to the use of ITU standard G.984.3 and essential to EPON, as standardized in IEEE 802.3.

216.    Rockstar and Constellation have breached their express and implied commitments to license the '879 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.  Refusing to offer to license alleged SEPs to Plaintiffs or their vendors on F/RAND or royalty-free terms;

c.  Refusing to enter into licensing negotiations with Plaintiffs or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.  Requiring Plaintiffs and third-parties, including Plaintiffs' vendors, to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.  Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Plaintiffs, that have adopted well-established digital telecommunication standards;

f.  Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to all industry participants on nondiscriminatory terms and conditions; and

g.  Transferring the '879 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor-in-interest.

217.  Through the foregoing acts, Rockstar and Constellation have breached the express and implied commitments Nortel and other entities made to the ITU and IEEE to license the '879 patent on F/RAND or royalty-free terms.

218.  As a result of those breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

219.     As a remedy for those breaches, to the extent the '879 patent is a SEP that is valid, enforceable, and infringed, Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '879 patent on F/RAND or royalty-free licensing terms.

220.     As an additional remedy for Rockstar's and Constellation's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

### COUNT III – BREACH OF CONTRACT WITH THE IETF
### TO LICENSE THE '862 PATENT ON F/RAND OR ROYALTY-FREE TERMS
### (AGAINST ROCKSTAR AND CONSTELLATION)

221.     Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

222.     Nortel provided an LOA agreeing to grant licenses to patents essential to any IETF standard, including RFC 4364, titled "BGP/MPLS IP Virtual Private Networks (VPNs)." (*See* Exhibit 60.)

223.     Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in the LOAs submitted to the IETF and in accordance with the IETF's IPR policies.

224.     IETF's policies, as amended over time, constitute a contractual commitment to offer licenses to SEPs in accordance with the terms of those policies.  By participating in the IETF, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer licenses to SEPs on F/RAND or royalty-free terms.

225.     As industry participants that would potentially implement the standards established by the IETF, Plaintiffs and their vendors are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the IETF.

46

226.    F/RAND and royalty-free encumbrances are irrevocable and run with the patents, and, as successors-in-interest to the Nortel Patent Portfolio, Rockstar and Constellation are obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

227.    As a result, Rockstar and Constellation are obligated to offer F/RAND or royalty-free licenses to Plaintiffs for the '862 patent to the extent necessary to practice BGP/MPLS IP Virtual Private Networks (VPNs) technology, as standardized in RFC 4364.

228.    By accusing Plaintiffs of infringing the '862 patent based solely on their use technologies standardized and defined in IETF standard RFC 4364, Rockstar and Constellation have alleged that the '862 patent is essential to the use of IETF standard RFC 4364.

229.    Rockstar and Constellation have breached their express and implied F/RAND licensing commitments to license the '862 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license alleged SEPs to Plaintiffs or their vendors on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Plaintiffs or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.    Requiring Plaintiffs and third-parties, including Plaintiffs' vendors, to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.      Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Plaintiffs, that have adopted well-established digital telecommunication standards;

f.      Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to all industry participants on nondiscriminatory terms and conditions; and

g.      Transferring the '862 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor-in-interest.

230.    Through the foregoing acts, Rockstar and Constellation have breached the express and implied commitments Nortel and other entities made to the IETF to license the '862 patent on F/RAND or royalty-free terms.

231.    As a result of those breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

232.    As a remedy for those breaches, to the extent the '862 patent  is a SEP that is valid, enforceable, and infringed, Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '862 patent on F/RAND or royalty-free licensing terms.

233.    As an additional remedy for Rockstar's and Constellation's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

**COUNT IV – BREACH OF CONTRACT WITH THE IETF**
**TO LICENSE THE '048 PATENT ON F/RAND OR ROYALTY-FREE TERMS**
**(AGAINST ROCKSTAR AND CONSTELLATION)**

234.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

235.    Nortel provided a LOA agreeing to grant licenses to patents essential to any IETF standard, including RFC 4090, titled "Fast Reroute Extensions to RSVP-TE for LSP Tunnels."  (*See* Exhibit 60.)

236.    Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in the LOAs submitted to the IETF and in accordance with the IETF's IPR policies.

237.    IETF's policies, as amended over time, constitute a contractual commitment to offer licenses to SEPs in accordance with the terms of those policies.  By participating in the IETF, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer licenses to SEPs on F/RAND or royalty-free terms.

238.    As industry participants that would potentially implement the standards established by the IETF, Plaintiffs and their vendors are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the IETF.

239.    F/RAND and royalty-free encumbrances are irrevocable and run with the patents, and, as successors-in-interest to the Nortel Patent Portfolio, Rockstar and Constellation are obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

240.    As a result, Rockstar and Constellation are obligated to offer F/RAND or royalty-free licenses to Plaintiffs for the '048 patent to the extent necessary to practice "Fast Reroute Extensions to RSVP-TE for LSP Tunnels," as standardized by RFC 4090.

241.    By accusing Plaintiffs of infringing the '048 patent based solely on their use technologies standardized and defined in RFC 4090, Rockstar and Constellation have alleged that the '048 patent is essential to the use of IETF standard RFC 4090.

242.    Rockstar and Constellation have breached their express and implied F/RAND licensing commitments to license the '048 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

  a. Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

  b. Refusing to offer to license alleged SEPs to Plaintiffs or their vendors on F/RAND or royalty-free terms;

  c. Refusing to enter into licensing negotiations with Plaintiffs or their vendors in the absence of highly-restrictive non-disclosure agreements;

  d. Requiring Plaintiffs and third-parties, including Plaintiffs' vendors, to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

  e. Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Plaintiffs, that have adopted well-established digital telecommunication standards;

  f. Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to all industry participants on nondiscriminatory terms and conditions; and

g.     Transferring the '048 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor-in-interest.

243.     Through the foregoing acts, Rockstar and Constellation have breached the express and implied commitments Nortel and other entities made to the IETF to license the '048 patent on F/RAND or royalty-free terms.

244.     As a result of those breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

245.     As a remedy for those breaches, to the extent the '048 patent  is a SEP that is valid, enforceable, and infringed, Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '048 patent on F/RAND or royalty-free licensing terms.

246.     As an additional remedy for Rockstar's and Constellation's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

## COUNT V – BREACH OF CONTRACT WITH THE IETF
## TO LICENSE THE '917 PATENT ON F/RAND OR ROYALTY-FREE TERMS
### (AGAINST ROCKSTAR AND CONSTELLATION)

247.     Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

248.     Nortel provided a LOA agreeing to grant licenses to patents essential to any IETF standard, including RFC 4090, titled "Fast Reroute Extensions to RSVP-TE for LSP Tunnels."  (*See* Exhibit 60.)

249.     Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in the LOAs submitted to the IETF and in accordance with the IETF's IPR policies.

250.     IETF's policies, as amended over time, constitute a contractual commitment to offer licenses to SEPs in accordance with the terms of those policies. By participating in the IETF, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer licenses to SEPs on F/RAND or royalty-free terms.

251.     As industry participants that would potentially implement the standards established by the IETF, Plaintiffs and their vendors are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the IETF.

252.     F/RAND and royalty-free encumbrances are irrevocable and run with the patents, and, as successors-in-interest to the Nortel Patent Portfolio, Rockstar and Constellation are obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

253.     As a result, Rockstar and Constellation are obligated to offer F/RAND or royalty-free licenses to Plaintiffs for the '917 patent to the extent necessary to practice "Fast Reroute Extensions to RSVP-TE for LSP Tunnels," as standardized by RFC 4090.

254.     By accusing Plaintiffs of infringing the '917 patent based solely on their use technologies standardized and defined in RFC 4090, Rockstar and Constellation have alleged that the '917 patent is essential to the use of IETF standard RFC 4090.

255.     Rockstar and Constellation have breached their express and implied F/RAND licensing commitments to license the '917 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.     Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.     Refusing to offer to license alleged SEPs to Plaintiffs or their vendors on F/RAND or royalty-free terms;

c.     Refusing to enter into licensing negotiations with Plaintiffs or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.     Requiring Plaintiffs and third-parties, including Plaintiffs' vendors, to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.     Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Plaintiffs, that have adopted well-established digital telecommunication standards;

f.     Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to all industry participants on nondiscriminatory terms and conditions; and

g.     Transferring the '917 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor-in-interest.

256.     Through the foregoing acts, Rockstar and Constellation have breached the express and implied commitments Nortel and other entities made to the IETF to license the '917 patent on F/RAND or royalty-free terms.

257.    As a result of those breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

258.    As a remedy for those breaches, to the extent the '917 patent  is a SEP that is valid, enforceable, and infringed, Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '917 patent on F/RAND or royalty-free licensing terms.

259.    As an additional remedy for Rockstar's and Constellation's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

<u>**COUNT VI – BREACH OF CONTRACT**</u>
<u>**TO LICENSE THE '389 PATENT ON F/RAND OR ROYALTY-FREE TERMS**</u>
**(AGAINST ROCKSTAR AND CONSTELLATION)**

260.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

261.    Nortel and its subsidiaries participated in drafting portions of the 3GPP specification concerning IP Multimedia Subsystems ("IMS"), including, for example, section 7.2 "IMS Multimedia Telephony and Supplementary Services (IMSTSS)" of 3GPP Release 8.  The 3GPP IPR policies require that participant companies, such as Nortel, be members of certain member organizations, such as ATIS and ETSI, which obligate members to disclose certain patents related to specifications and standards to which they have contributed.  On information and belief, Nortel made representations to ATIS and/or ETSI committing to license any of its patents that read on 3GPP IMS standards on FRAND and/or royalty-free terms in connection with its participation in drafting the 3GPP IMS specifications.

262.   Nortel was contractually obligated to offer a license to its standard essential patents in a manner consistent with the representations it made to the 3GPP, ATIS and/or ETSI and in accordance with the 3GPP, ATIS, and ETSI IPR policies.

263.   The policies of the 3GPP, ATIS, and ETSI, as amended over time, constitutes a contractual commitment to offer standard essential patents in accordance with the terms of those policies.  By participating in the 3GPP, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer standard essential patents on RAND or royalty-free terms.

264.   As industry participants that would potentially implement the standards established by the 3GPP, Plaintiffs and their vendors are intended third-party beneficiaries of Nortel's and other entities' contractual commitments to the 3GPP, ATIS, and ETSI.

265.   F/RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors-in-interest to the Nortel Patent Portfolio, Rockstar and Constellation are obligated to honor Nortel's F/RAND or royalty-free licensing commitments with respect to SEPs.

266.   As a result, Rockstar and Constellation are obligated to offer F/RAND or royalty-free licenses to Plaintiffs for the '389 patent to the extent necessary to practice IMS technology, as standardized in various 3GPP Releases.

267.   On information and belief, Constellation has accused Plaintiffs of infringing the '389 patent based on their use of IMS as standardized in various 3GPP Releases.

268.   By accusing Plaintiffs of infringing the '389 patent based solely on the use of technologies standardized in 3GPP Releases, Rockstar and Constellation have alleged that the '389 patent is essential to the use of 3GPP Releases.

269.    Rockstar and Constellation have breached their express and implied F/RAND licensing commitments to license the '389 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license alleged SEPs to Plaintiffs or their vendors on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Plaintiffs or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.    Requiring Plaintiffs and third-parties, including Plaintiffs' vendors, to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.    Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including Plaintiffs, that have adopted well-established digital telecommunication standards;

f.    Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to all industry participants on nondiscriminatory terms and conditions; and

g.    Transferring the '389 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor-in-interest.

270.     Through the foregoing acts, Rockstar and Constellation have breached the express and implied commitments Nortel and other entities made to the 3GPP, ATIS, and ETSI to license the '389 patent on F/RAND or royalty-free terms.

271.     As a result of those breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

272.     As a remedy for those breaches, to the extent the '389 patent  is a SEP that is valid, enforceable, and infringed, Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '389 patent on F/RAND or royalty-free licensing terms.

273.     As an additional remedy for Rockstar's and Constellation's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

## COUNT VII – BREACH OF CONTRACT WITH CABLELABS TO LICENSE THE '474 PATENT ON ROYALTY-FREE TERMS
## (AGAINST ROCKSTAR AND CONSTELLATION)

274.     Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

275.     As discussed above, one or more of Rockstar's and Constellation's predecessors-in-interest in the '474 patent joined the DOCSIS and PacketCable patent pools and granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by them or their affiliates essential for compliance with current or future versions of DOCSIS and PacketCable.

276.     As a DOCSIS and PacketCable Licensor, Cisco obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs

had the right to license or sublicense, including the '474 patent, to the extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

277.    As a DOCSIS and PacketCable Licensor, ARRIS obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense, including the '474 patent, to the extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

278.    As discussed above, Plaintiffs purchase hardware and software from Cisco and ARRIS that comply with the DOCSIS and PacketCable standards, including:

      a.      Cisco CMTSs;

      b.      Cisco CMs;

      c.      Cisco eMTAs;

      d.      Cisco STBs;

      e.      ARRIS CMTSs;

      f.      ARRIS CMs;

      g.      ARRIS eMTAs; and

      h.      ARRIS STBs.

279.    Pursuant to the DOCSIS and PacketCable license agreements (the "CableLabs agreements"), Plaintiffs are sublicensed to the Nortel Patent Portfolio to the extent necessary to practice the DOCSIS and/or PacketCable Standards.  Alternatively, as purchasers of products that comply with the DOCSIS and PacketCable standards, Plaintiffs are intended third-party beneficiaries of the CableLabs agreements.

280.  Rockstar and Constellation have breached their express and implied commitments to license the '474 patent on royalty-free terms by engaging in at least the following acts:

a.  Accusing Plaintiffs of infringing the '474 patent by using DOCSIS and/or PacketCable;

b.  Accusing Plaintiffs of infringing the '474 patent by purchasing or using Cisco and/or ARRIS equipment that is certified for compliance with DOCSIS and/or PacketCable, including at least:  CMTSs, CMs, STBs, eMTAs, and Routers;

c.  Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.  Refusing to enter into licensing negotiations with Plaintiffs in the absence of highly-restrictive non-disclosure agreements;

e.  Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including Plaintiffs, to pay licensing fees for patents that are already licensed to those industry participants; and

f.  Transferring the '474 patent to Constellation with the knowledge that Constellation would not honor its royalty-free licensing obligations as a successor-in-interest.

281.  As a result of those breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

282.     As a remedy for those breaches, to the extent the '474 patent  is a SEP that is  valid,  enforceable,  and  infringed,  Plaintiffs  respectfully  request  the  equitable  remedy  of specific  performance  by  Rockstar  and  Constellation  of  their  obligations  to  provide  licenses  on royalty-free licensing terms.

283.     As an additional remedy for Rockstar's  and  Constellation's  breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

## COUNT VIII – BREACH OF CONTRACT WITH CABLELABS TO LICENSE THE '197 PATENT ON ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

284.     Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

285.     As  discussed  above,  one  or  more  of  Rockstar's  and  Constellation's predecessors-in-interest in the '197 patent joined the DOCSIS and PacketCable patent pools and granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by them or their affiliates essential for compliance with current or future versions of DOCSIS and PacketCable.

286.     As a DOCSIS and PacketCable Licensor, Cisco obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had  the  right  to  license  or  sublicense,  including  the  '197  patent,  to  the  extent  necessary  for compliance with current or future versions of DOCSIS and PacketCable.

287.     As  a  DOCSIS  and  PacketCable  Licensor,  ARRIS  obtained  from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs  had  the  right  to  license  or  sublicense,  including  the  '197  patent,  to  the  extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

288.     As discussed above, Plaintiffs purchase hardware and software from Cisco and ARRIS that comply with the DOCSIS and PacketCable standards, including:

> a.     Cisco CMTSs;
>
> b.     Cisco CMs;
>
> c.     Cisco eMTAs;
>
> d.     Cisco STBs;
>
> e.     ARRIS CMTSs;
>
> f.     ARRIS CMs;
>
> g.     ARRIS eMTAs; and
>
> h.     ARRIS STBs.

289.     Pursuant to the DOCSIS and PacketCable License Agreements (the "CableLabs agreements"), Plaintiffs are sublicensed to the Nortel Patent Portfolio to the extent necessary to practice the DOCSIS and/or PacketCable Standards.  Alternatively, as purchasers of products that comply with the DOCSIS and PacketCable standards, Plaintiffs are intended third-party beneficiaries of the CableLabs agreements.

290.     Rockstar and Constellation have breached their express and implied commitments to license the '197 patent on royalty-free terms by engaging in at least the following acts:

> a.     Accusing Plaintiffs of infringing the '197 patent by using DOCSIS and/or PacketCable;
>
> b.     Accusing Plaintiffs of infringing the '197 patent by purchasing or using Cisco and/or ARRIS equipment that is certified for compliance with DOCSIS and/or PacketCable, including at least:  CMTSs, CMs, STBs, eMTAs, and Routers;

c.      Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.      Refusing to enter into licensing negotiations with Plaintiffs in the absence of highly-restrictive non-disclosure agreements;

e.      Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including Plaintiffs, to pay licensing fees for patents that are already licensed to those industry participants; and

f.      Transferring the '197 patent to Constellation with the knowledge that Constellation would not honor its royalty-free licensing obligations as a successor-in-interest.

291.    As a result of those breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

292.    As a remedy for those breaches, to the extent the '197 patent is a SEP that is valid, enforceable, and infringed, Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses on royalty-free licensing terms.

293.    As an additional remedy for Rockstar's and Constellation's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

## COUNT IX – BREACH OF CONTRACT WITH CABLELABS TO LICENSE THE '893 PATENT ON ROYALTY-FREE TERMS
## (AGAINST ROCKSTAR AND CONSTELLATION)

294.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

295.    As discussed above, one or more of Rockstar's and Constellation's predecessors-in-interest in the '893 patent joined the DOCSIS and PacketCable patent pools and granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by them or their affiliates essential for compliance with current or future versions of DOCSIS and PacketCable.

296.    As a DOCSIS and PacketCable Licensor, Cisco obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense, including the '893 patent, to the extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

297.    As a DOCSIS and PacketCable Licensor, ARRIS obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense, including the '893 patent, to the extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

298.    As discussed above, Plaintiffs purchase hardware and software from Cisco and ARRIS that comply with the DOCSIS and PacketCable standards, including:

a.    Cisco CMTSs;

b.    Cisco CMs;

c.    Cisco eMTAs;

d.    Cisco STBs;

e.    ARRIS CMTSs;

      f.      ARRIS CMs;

      g.      ARRIS eMTAs; and

      h.      ARRIS STBs.

299.    Pursuant to the DOCSIS and PacketCable License Agreements (the "CableLabs agreements"), Plaintiffs are sublicensed to the Nortel Patent Portfolio to the extent necessary to practice the DOCSIS and/or PacketCable Standards.  Alternatively, as purchasers of products that comply with the DOCSIS and PacketCable standards, Plaintiffs are intended third-party beneficiaries of the CableLabs agreements.

300.    Rockstar and Constellation have breached their express and implied commitments to license the '893 patent on royalty-free terms by engaging in at least the following acts:

      a.      Accusing Plaintiffs of infringing the '893 patent by using DOCSIS and/or PacketCable;

      b.      Accusing Plaintiffs of infringing the '893 patent by purchasing or using Cisco and/or ARRIS equipment that is certified for compliance with DOCSIS and/or PacketCable, including at least:  CMTSs, CMs, STBs, eMTAs, and Routers;

      c.      Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

      d.      Refusing to enter into licensing negotiations with Plaintiffs in the absence of highly-restrictive non-disclosure agreements;

      e.      Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including Plaintiffs,

to pay licensing fees for patents that are already licensed to those industry participants; and

       f.     Transferring the '893 patent to Constellation with the knowledge that Constellation would not honor its royalty-free licensing obligations as a successor-in-interest.

301.    As a result of those breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

302.    As a remedy for those breaches, to the extent the '893 patent  is a SEP that is valid, enforceable, and infringed, Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses on royalty-free licensing terms.

303.    As an additional remedy for Rockstar's and Constellation's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

## COUNT X – BREACH OF CONTRACT WITH CABLELABS TO LICENSE THE '253 PATENT ON ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

304.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

305.    As discussed above, one or more of Rockstar's and Constellation's predecessors-in-interest in the '253 patent joined the DOCSIS and PacketCable patent pools and granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by them or their affiliates essential for compliance with current or future versions of DOCSIS and PacketCable.

306.    As a DOCSIS and PacketCable Licensor, Cisco obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense, including the '253 patent, to the extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

307.    As a DOCSIS and PacketCable Licensor, ARRIS obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense, including the '253 patent, to the extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

308.    As discussed above, Plaintiffs purchase hardware and software from Cisco and ARRIS that comply with the DOCSIS and PacketCable standards, including:

> a.      Cisco CMTSs;
>
> b.      Cisco CMs;
>
> c.      Cisco eMTAs;
>
> d.      Cisco STBs;
>
> e.      ARRIS CMTSs;
>
> f.      ARRIS CMs;
>
> g.      ARRIS eMTAs; and
>
> h.      ARRIS STBs.

309.    Pursuant to the DOCSIS and PacketCable License Agreements (the "CableLabs agreements"), Plaintiffs are sublicensed to the Nortel Patent Portfolio to the extent necessary to practice the DOCSIS and/or PacketCable Standards.  Alternatively, as purchasers of products that comply with the DOCSIS and PacketCable standards, Plaintiffs are intended third-party beneficiaries of the CableLabs agreements.

310.    Rockstar and Constellation have breached their express and implied commitments to license the '253 patent on royalty-free terms by engaging in at least the following acts:

a.    Accusing Plaintiffs of infringing the '253 patent by using DOCSIS and/or PacketCable;

b.    Accusing Plaintiffs of infringing the '253 patent by purchasing or using Cisco and/or ARRIS equipment that is certified for compliance with DOCSIS and/or PacketCable, including at least: CMTSs, CMs, STBs, eMTAs, and Routers;

c.    Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.    Refusing to enter into licensing negotiations with Plaintiffs in the absence of highly-restrictive non-disclosure agreements;

e.    Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including Plaintiffs, to pay licensing fees for patents that are already licensed to those industry participants; and

f.    Transferring the '253 patent to Constellation with the knowledge that Constellation would not honor its royalty-free licensing obligations as a successor-in-interest.

311.    As a result of those breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

312.     As a remedy for those breaches, to the extent the '253 patent  is a SEP that is valid, enforceable, and infringed, Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses on royalty-free licensing terms.

313.     As an additional remedy for Rockstar's and Constellation's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

## COUNT XI – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE IEEE TO LICENSE THE '397 PATENT ON F/RAND TERMS
### (AGAINST ROCKSTAR)

314.     Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

315.     As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '397 patent, on F/RAND or royalty-free terms. (*See* Exhibit 55.)

316.     Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors-in-interest, would deal with Plaintiffs in good faith and with fair dealing, would take no action that would deprive Plaintiffs of their benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect Plaintiffs' enjoyment of their rights under Nortel's contractual commitments.

317.     At all relevant times, Plaintiffs have duly performed all material conditions, covenants, and promises on their parts to be performed under Nortel's contractual commitments.

318.     As successors-in-interest to the Nortel Patent Portfolio, Rockstar was obligated to honor F/RAND or royalty-free licensing commitments with respect to the '397 patent and all other SEPs in the Nortel Patent Portfolio.

319.     Rockstar has breached the covenant of good faith and fair dealing implied in its agreement with the IEEE to license the '397 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

    a.     Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

    b.     Refusing to offer to license alleged SEPs to Plaintiffs or their vendors on F/RAND or royalty-free terms;

    c.     Refusing to enter into licensing negotiations with Plaintiffs or their vendors in the absence of highly-restrictive non-disclosure agreements;

    d.     Requiring Plaintiffs and third-parties, including Plaintiffs' vendors, to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

    e.     Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Plaintiffs, that have adopted well-established digital telecommunication standards; and

    f.     Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to all industry participants on nondiscriminatory terms and conditions.

320.     Through the foregoing acts, Rockstar unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate Plaintiffs' enjoyment of their rights

under these F/RAND or royalty-free licensing commitments, prevented Plaintiffs from receiving the benefits Plaintiffs were entitled to receive under commitments to license the '397 patent on F/RAND or royalty-free terms.

321.    As a result of the foregoing breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

322.    As a remedy for those breaches, to the extent the '397 patent  is a SEP that is valid, enforceable, and infringed, Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar of its obligation to provide licenses to the '397 patent on F/RAND or royalty-free licensing terms.

323.    As an additional remedy for Rockstar's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

### COUNT XII – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE ITU AND IEEE TO LICENSE THE '879 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

324.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

325.    As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '879 patent, on F/RAND or royalty-free terms.

326.    Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors-in-interest, would deal with Plaintiffs in good faith and with fair dealing, would take no action that would deprive Plaintiffs of their benefits under Nortel's

contractual commitments, and would take such actions as were necessary to protect Plaintiffs' enjoyment of their rights under Nortel's contractual commitments.

327.    At all relevant times, Plaintiffs have duly performed all material conditions, covenants, and promises on their parts to be performed under Nortel's contractual commitments.

328.    As successors-in-interest to the Nortel Patent Portfolio, Rockstar and Constellation were obligated to honor F/RAND or royalty-free licensing commitments with respect to the '879 patent and any other SEPs in the Nortel Patent Portfolio.

329.    Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in their agreement with the ITU and IEEE to license the '879 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license alleged SEPs to Plaintiffs or their vendors on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Plaintiffs or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.    Requiring Plaintiffs and third-parties, including Plaintiffs' vendors, to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.    Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including Plaintiffs, that have adopted well-established digital telecommunication standards;

f.      Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to all industry participants on nondiscriminatory terms and conditions; and

g.      Transferring the '879 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor-in-interest.

330.    Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in its agreement with the ITU and IEEE to license the '879 patent on F/RAND or royalty-free terms when it brought suit against TWC and Windstream in an attempt to circumvent its obligations to license the '879 patent on F/RAND or royalty-free terms.

331.    Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate Plaintiffs' enjoyment of their rights under these F/RAND or royalty-free licensing commitments, prevented Plaintiffs from receiving the benefits Plaintiffs were entitled to receive under commitments to license the '879 patent on F/RAND or royalty-free terms.

332.    As a result of the foregoing breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

333.    As a remedy for those breaches, to the extent the '879 patent  is a SEP that is valid, enforceable, and infringed, Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '879 patent on F/RAND or royalty-free licensing terms.

334.    As an additional remedy for Rockstar's and Constellation's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

## COUNT XIII – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE IETF TO LICENSE THE '862 PATENT ON F/RAND OR ROYALTY-FREE TERMS
### (AGAINST ROCKSTAR AND CONSTELLATION)

335.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

336.    As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '862 patent, on F/RAND or royalty-free terms.

337.    Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors-in-interest, would deal with Plaintiffs in good faith and with fair dealing, would take no action that would deprive Plaintiffs of their benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect Plaintiffs' enjoyment of their rights under Nortel's contractual commitments.

338.    At all relevant times, Plaintiffs have duly performed all material conditions, covenants, and promises on their parts to be performed under Nortel's contractual commitments.

339.    As successors-in-interest to the Nortel Patent Portfolio, Rockstar and Constellation were obligated to honor F/RAND or royalty-free licensing commitments with respect to the SEPs in the Nortel Patent Portfolio.

340.    Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in their agreement with the IETF to license the '862 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license alleged SEPs to Plaintiffs or their vendors on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Plaintiffs or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.    Requiring Plaintiffs and third-parties, including Plaintiffs' vendors, to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.    Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including Plaintiffs, that have adopted well-established digital telecommunication standards;

f.    Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to all industry participants on nondiscriminatory terms and conditions; and

g.    Transferring the '862 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor-in-interest.

341.    Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate Plaintiffs'

enjoyment of their rights under these F/RAND or royalty-free licensing commitments, prevented Plaintiffs from receiving the benefits Plaintiffs were entitled to receive under commitments to license the '862 patent on F/RAND or royalty-free terms.

342.    As a result of the foregoing breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

343.    As a remedy for those breaches, to the extent the '862 patent is a SEP that is valid, enforceable, and infringed, Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '862 patent on F/RAND or royalty-free licensing terms.

344.    As an additional remedy for Rockstar's and Constellation's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

### COUNT XIV – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE IETF TO LICENSE THE '048 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

345.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

346.    As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '048 patent, on F/RAND or royalty-free terms.

347.    Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors-in-interest, would deal with Plaintiffs in good faith and with fair dealing, would take no action that would deprive Plaintiffs of their benefits under Nortel's

contractual commitments, and would take such actions as were necessary to protect Plaintiffs' enjoyment of their rights under Nortel's contractual commitments.

348.   At all relevant times, Plaintiffs have duly performed all material conditions, covenants, and promises on their parts to be performed under Nortel's contractual commitments.

349.   As successors-in-interest to the Nortel Patent Portfolio, Rockstar and Constellation were obligated to honor F/RAND or royalty-free licensing commitments with respect to the SEPs in the Nortel Patent Portfolio.

350.   Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in their agreement with the IETF to license the '048 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.   Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.   Refusing to offer to license alleged SEPs to Plaintiffs or their vendors on F/RAND or royalty-free terms;

c.   Refusing to enter into licensing negotiations with Plaintiffs or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.   Requiring Plaintiffs and third-parties, including Plaintiffs' vendors, to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.   Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including Plaintiffs, that have adopted well-established digital telecommunication standards;

f.     Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to all industry participants on nondiscriminatory terms and conditions; and

g.     Transferring the '048 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor-in-interest.

351.    Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate Plaintiffs' enjoyment of their rights under these F/RAND or royalty-free licensing commitments, prevented Plaintiffs from receiving the benefits Plaintiffs were entitled to receive under commitments to license the '048 patent on F/RAND or royalty-free terms.

352.    As a result of the foregoing breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

353.    As a remedy for those breaches, to the extent the '048 patent is a SEP that is valid, enforceable, and infringed, Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '048 patent on F/RAND or royalty-free licensing terms.

354.    As an additional remedy for Rockstar's and Constellation's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

## COUNT XV – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE IETF TO LICENSE THE '917 PATENT ON F/RAND OR ROYALTY-FREE TERMS
### (AGAINST ROCKSTAR AND CONSTELLATION)

355.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

356.    As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '917 patent, on F/RAND or royalty-free terms.

357.    Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors-in-interest, would deal with Plaintiffs in good faith and with fair dealing, would take no action that would deprive Plaintiffs of their benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect Plaintiffs' enjoyment of their rights under Nortel's contractual commitments.

358.    At all relevant times, Plaintiffs have duly performed all material conditions, covenants, and promises on their parts to be performed under Nortel's contractual commitments.

359.    As successors-in-interest to the Nortel Patent Portfolio, Rockstar and Constellation were obligated to honor F/RAND or royalty-free licensing commitments with respect to the SEPs in the Nortel Patent Portfolio.

360.    Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in their agreement with the IETF to license the '917 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

        b.      Refusing to offer to license alleged SEPs to Plaintiffs or their vendors on F/RAND or royalty-free terms;

        c.      Refusing to enter into licensing negotiations with Plaintiffs or their vendors in the absence of highly-restrictive non-disclosure agreements;

        d.      Requiring Plaintiffs and third-parties, including Plaintiffs' vendors, to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

        e.      Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including Plaintiffs, that have adopted well-established digital telecommunication standards;

        f.      Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to all industry participants on nondiscriminatory terms and conditions; and

        g.      Transferring the '917 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor-in-interest.

    361.    Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate Plaintiffs' enjoyment of their rights under these F/RAND or royalty-free licensing commitments, prevented Plaintiffs from receiving the benefits Plaintiffs were entitled to receive under commitments to license the '917 patent on F/RAND or royalty-free terms.

362.     As a result of the foregoing breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

363.     As a remedy for those breaches, to the extent the '917 patent is a SEP that is valid, enforceable, and infringed, Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '917 patent on F/RAND or royalty-free licensing terms.

364.     As an additional remedy for Rockstar's and Constellation's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

## COUNT XVI – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT TO LICENSE THE '389 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

365.     Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

366.     As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '389 patent, on F/RAND or royalty-free terms.

367.     Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors-in-interest, would deal with Plaintiffs in good faith and with fair dealing, would take no action that would deprive Plaintiffs of their benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect Plaintiffs' enjoyment of their rights under Nortel's contractual commitments.

368.    At all relevant times, Plaintiffs have duly performed all material conditions, covenants, and promises on their parts to be performed under Nortel's contractual commitments.

369.    As successors-in-interest to the Nortel Patent Portfolio, Rockstar and Constellation were obligated to honor F/RAND or royalty-free licensing commitments with respect to the SEPs in the Nortel Patent Portfolio.

370.    Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in their agreement with the 3GPP, ATIS, and ETSI to license the '389 patent on F/RAND or royalty-free terms by engaging in at least the following acts:

a.    Making or having made public statements to the effect that Nortel's F/RAND or royalty-free licensing commitments would not be honored;

b.    Refusing to offer to license alleged SEPs to Plaintiffs or their vendors on F/RAND or royalty-free terms;

c.    Refusing to enter into licensing negotiations with Plaintiffs or their vendors in the absence of highly-restrictive non-disclosure agreements;

d.    Requiring Plaintiffs and third-parties, including Plaintiffs' vendors, to execute non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations;

e.    Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including Plaintiffs, that have adopted well-established digital telecommunication standards;

f.      Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to all industry participants on nondiscriminatory terms and conditions; and

g.      Transferring the '389 patent to Constellation with the knowledge that Constellation would not honor its F/RAND or royalty-free licensing obligations as a successor-in-interest.

371.    Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate Plaintiffs' enjoyment of their rights under these F/RAND or royalty-free licensing commitments, prevented Plaintiffs from receiving the benefits Plaintiffs were entitled to receive under commitments to license the '389 patent on F/RAND or royalty-free terms.

372.    As a result of the foregoing breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

373.    As a remedy for those breaches, to the extent the '389 patent is a SEP that is valid, enforceable, and infringed, Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '389 patent on F/RAND or royalty-free licensing terms.

374.    As an additional remedy for Rockstar's and Constellation's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

## COUNT XVII – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CABLELABS CONTRACTS WITH RESPECT TO THE '474 PATENT (AGAINST ROCKSTAR AND CONSTELLATION)

375.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

376.    As discussed above, one or more of Rockstar's and Constellation's predecessors-in-interest signed license agreements with CableLabs (the "CableLabs agreements") committing to provide licenses to certain patents, including the '474 patent, on royalty-free terms.

377.    The CableLabs agreements include contractual commitments to license the '474 patent on royalty-free terms.  Those commitments are irrevocable and run with the patent and, as successors-in-interest to the '474 patent, Rockstar and Constellation are obligated to honor the CableLabs contractual commitments.

378.    The CableLabs contractual commitments contain a covenant implied by law that CableLabs licensors would deal with Plaintiffs in good faith and with fair dealing, would take no action that would deprive Plaintiffs of their benefits under the CableLabs contractual commitments, and would take such actions as were necessary to protect Plaintiffs' enjoyment of their rights under the CableLabs contractual commitments.

379.    At all relevant times, Plaintiffs have duly performed all material conditions, covenants, and promises on their parts to be performed under the CableLabs contractual commitments.

380.    As successors-in-interest to the '474 patent, Rockstar and Constellation were obligated to honor the CableLabs contractual commitments.

381.   Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in the CableLabs agreements by engaging in the following acts:

a.   Accusing Plaintiffs of infringing the '474 patent by using DOCSIS and/or PacketCable;

b.   Accusing Plaintiffs of infringing the '474 patent by purchasing or using Cisco and/or ARRIS equipment that is certified for compliance with DOCSIS and/or PacketCable, including at least:  CMTSs, CMs, STBs, eMTAs, and Routers;

c.   Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.   Refusing to enter into licensing negotiations with Plaintiffs in the absence of highly-restrictive non-disclosure agreements;

e.   Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including Plaintiffs, to pay licensing fees for patents that are already licensed to those industry participants; and

f.   Transferring the '474 patent to Constellation with the knowledge that Constellation would not honor its royalty-free licensing obligations as a successor-in-interest.

382.   Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate Plaintiffs' rights under the CableLabs agreements, prevented Plaintiffs from receiving the benefits they were entitled to receive under commitments to license the '474 patent on royalty-free terms.

383.     As a result of the foregoing breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

384.     As a remedy for those breaches, to the extent the '474 patent  is a SEP that is valid, enforceable, and infringed, Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '474 patent on royalty-free licensing terms.

385.     As an additional remedy for Rockstar's and Constellation's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

## COUNT XVIII – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CABLELABS CONTRACTS WITH RESPECT TO THE '197 PATENT (AGAINST ROCKSTAR AND CONSTELLATION)

386.     Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

387.     As discussed above, one or more of Rockstar's and Constellation's predecessors-in-interest signed license agreements with CableLabs committing to provide licenses to certain patents, including the '197 patent, on royalty-free terms.

388.     The CableLabs agreements include contractual commitments to license the '197 patent on royalty-free terms.  Those commitments are irrevocable and run with the patent and, as successors-in-interest to the '197 patent, Rockstar and Constellation are obligated to honor the CableLabs contractual commitments.

389.     The CableLabs contractual commitments contain a covenant implied by law that CableLabs licensors would deal with Plaintiffs in good faith and with fair dealing, would take no action that would deprive Plaintiffs of their benefits under the CableLabs

contractual commitments, and would take such actions as were necessary to protect Plaintiffs' enjoyment of their rights under the CableLabs contractual commitments.

390.   At all relevant times, Plaintiffs have duly performed all material conditions, covenants, and promises on their parts to be performed under the CableLabs contractual commitments.

391.   As successors-in-interest to the '197 patent, Rockstar and Constellation were obligated to honor the CableLabs contractual commitments.

392.   Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in the CableLabs agreements by engaging in the following acts:

a.   Accusing Plaintiffs of infringing the '197 patent by using DOCSIS and/or PacketCable;

b.   Accusing Plaintiffs of infringing the '197 patent by purchasing or using Cisco and/or ARRIS equipment that is certified for compliance with DOCSIS and/or PacketCable, including at least:  CMTSs, CMs, STBs, eMTAs, and Routers;

c.   Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.   Refusing to enter into licensing negotiations with Plaintiffs in the absence of highly-restrictive non-disclosure agreements;

e.   Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including Plaintiffs, to pay licensing fees for patents that are already licensed to those industry participants; and

f. Transferring the '197 patent to Constellation with the knowledge that Constellation would not honor its royalty-free licensing obligations as a successor-in-interest.

393. Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate Plaintiffs' rights under the CableLabs agreements, prevented Plaintiffs from receiving the benefits they were entitled to receive under commitments to license the '197 patent on royalty-free terms.

394. As a result of the foregoing breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

395. As a remedy for those breaches, Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '197 patent on royalty-free licensing terms.

396. As an additional remedy for Rockstar's and Constellation's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

## COUNT XIX – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CABLELABS CONTRACTS WITH RESPECT TO THE '893 PATENT (AGAINST ROCKSTAR AND CONSTELLATION)

397. Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

398. As discussed above, one or more of Rockstar's and Constellation's predecessors-in-interest signed license agreements with CableLabs committing to provide licenses to certain patents, including the '893 patent, on royalty-free terms.

399.    The CableLabs agreements include contractual commitments to license the '893 patent on royalty-free terms.  Those commitments are irrevocable and run with the patent and, as successors-in-interest to the '893 patent, Rockstar and Constellation are obligated to honor the CableLabs contractual commitments.

400.    The CableLabs contractual commitments contain a covenant implied by law that CableLabs licensors would deal with Plaintiffs in good faith and with fair dealing, would take no action that would deprive Plaintiffs of their benefits under the CableLabs contractual commitments, and would take such actions as were necessary to protect Plaintiffs' enjoyment of their rights under the CableLabs contractual commitments.

401.    At all relevant times, Plaintiffs have duly performed all material conditions, covenants, and promises on their parts to be performed under the CableLabs contractual commitments.

402.    As successors-in-interest to the '893 patent, Rockstar and Constellation were obligated to honor the CableLabs contractual commitments.

403.    Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in the CableLabs agreements by engaging in the following acts:

    a.    Accusing Plaintiffs of infringing the '893 patent by using DOCSIS and/or PacketCable;

    b.    Accusing Plaintiffs of infringing the '893 patent by purchasing or using Cisco and/or ARRIS equipment that is certified for compliance with DOCSIS and/or PacketCable, including at least:  CMTSs, CMs, STBs, eMTAs, and Routers;

    c.    Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.      Refusing to enter into licensing negotiations with Plaintiffs in the absence of highly-restrictive non-disclosure agreements;

e.      Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including Plaintiffs, to pay licensing fees for patents that are already licensed to those industry participants; and

f.      Transferring the '893 patent to Constellation with the knowledge that Constellation would not honor its royalty-free licensing obligations as a successor-in-interest.

404.    Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate Plaintiffs' rights under the CableLabs agreements, prevented Plaintiffs from receiving the benefits they were entitled to receive under commitments to license the '893 patent on royalty-free terms.

405.    As a result of the foregoing breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

406.    As a remedy for those breaches, to the extent the '893 patent  is a SEP that is valid, enforceable, and infringed, Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '893 patent on royalty-free licensing terms.

407.    As an additional remedy for Rockstar's and Constellation's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

## COUNT XX – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CABLELABS CONTRACTS WITH RESPECT TO THE '253 PATENT (AGAINST ROCKSTAR AND CONSTELLATION)

408.     Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

409.     As discussed above, one or more of Rockstar's and Constellation's predecessors-in-interest signed license agreements with CableLabs committing to provide licenses to certain patents, including the '253 patent, on royalty-free terms.

410.     The CableLabs agreements include contractual commitments to license the '253 patent on royalty-free terms.  Those commitments are irrevocable and run with the patent and, as successors-in-interest to the '253 patent, Rockstar and Constellation are obligated to honor the CableLabs contractual commitments.

411.     The CableLabs contractual commitments contain a covenant implied by law that CableLabs licensors would deal with Plaintiffs in good faith and with fair dealing, would take no action that would deprive Plaintiffs of their benefits under the CableLabs contractual commitments, and would take such actions as were necessary to protect Plaintiffs' enjoyment of their rights under the CableLabs contractual commitments.

412.     At all relevant times, Plaintiffs have duly performed all material conditions, covenants, and promises on their parts to be performed under the CableLabs contractual commitments.

413.     As successors-in-interest to the '253 patent, Rockstar and Constellation were obligated to honor the CableLabs contractual commitments.

414.    Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in the CableLabs agreements by engaging in the following acts:

a.    Accusing Plaintiffs of infringing the '253 patent by using DOCSIS and/or PacketCable;

b.    Accusing Plaintiffs of infringing the '253 patent by purchasing or using Cisco and/or ARRIS equipment that is certified for compliance with DOCSIS and/or PacketCable, including at least:  CMTSs, CMs, STBs, eMTAs, and Routers;

c.    Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.    Refusing to enter into licensing negotiations with Plaintiffs in the absence of highly-restrictive non-disclosure agreements;

e.    Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including Plaintiffs, to pay licensing fees for patents that are already licensed to those industry participants; and

f.    Transferring the '253 patent to Constellation with the knowledge that Constellation would not honor its royalty-free licensing obligations as a successor-in-interest.

415.    Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate Plaintiffs' rights under the CableLabs agreements, prevented Plaintiffs from receiving the benefits they were entitled to receive under commitments to license the '253 patent on royalty-free terms.

416.    As a result of the foregoing breaches, Plaintiffs have been injured in their business or property, and are threatened by imminent loss of profits, loss of customers, and loss of goodwill.

417.    As a remedy for those breaches, to the extent the '253 patent is a SEP that is valid, enforceable, and infringed,  Plaintiffs respectfully request the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses to the '253 patent on royalty-free licensing terms.

418.    As an additional remedy for Rockstar's and Constellation's breaches, Plaintiffs respectfully request restitution and/or expectancy damages in an amount to be proven at trial.

## COUNT XXI – DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '397 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR)

419.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

420.    As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to the '397 patent on F/RAND or royalty-free terms.  (*See* Exhibit 55.)  The agreements bind all successors-in-interest to the '397 patent.

421.    As subsequent owners to the Nortel patent portfolio, Rockstar is obligated to honor Nortel's express and implied F/RAND or royalty-free licensing commitments with respect to the '397 patent.

422.    Rockstar has publicly repudiated its duty to honor its F/RAND or royalty-free licensing commitments with respect to the '397 patent by, among other things, asserting the '397 patent against GigE and 10GigE.

423.     A dispute therefore exists between the parties concerning whether Rockstar is obligated to offer licenses for the '397 patent on F/RAND or royalty-free terms.

424.     The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

425.     Plaintiffs seek a declaratory judgment that Rockstar has not offered licenses for the '397 patent to Plaintiffs on terms consistent with F/RAND or royalty-free terms.

426.     Plaintiffs further seek a declaratory judgment setting forth the F/RAND or royalty-free terms for the '397 patent.

427.     Plaintiffs further seek a declaratory judgment that if Rockstar refuses to offer licenses to the '397 patent to Plaintiffs on F/RAND or royalty-free terms, the '397 patent shall be unenforceable as to Plaintiffs.

## COUNT XXII – DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '879 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

428.     Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

429.     As discussed above, Nortel voluntarily agreed to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use, and sell implementations of ITU standard G.984.3 or EPON, as standardized in IEEE 802.3.  (*See* Exhibit 61.)  The agreements bind all successors-in-interest to the '879 patent.

430.     As subsequent owners to the Nortel Patent Portfolio, Rockstar and Constellation are obligated to honor Nortel's express and implied F/RAND or royalty-free licensing commitments with respect to the '879 patent.

431. Rockstar and Constellation have publicly repudiated their duty to honor their F/RAND or royalty-free licensing commitments with respect to the '879 patent by, among other things, asserting the '879 patent against ITU standard G.984.3 and IEEE standard 802.3.

432. A dispute therefore exists between the parties concerning whether Rockstar and Constellation are obligated to offer licenses for the '879 patent on F/RAND or royalty-free terms.

433. The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

434. Plaintiffs seek a declaratory judgment that Rockstar and Constellation have not offered licenses for the '879 patent to Plaintiffs on terms consistent with F/RAND or royalty-free terms.

435. Plaintiffs further seek a declaratory judgment setting forth the F/RAND or royalty-free terms for the '879 patent.

436. Plaintiffs further seek a declaratory judgment that if Rockstar or Constellation refuse to offer licenses to the '879 patent to Plaintiffs on F/RAND or royalty-free terms, the '879 patent shall be unenforceable as to Plaintiffs.

## COUNT XXIII – DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '862 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

437. Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

438. As discussed above, Nortel voluntarily agreed with the IETF to make available nonexclusive licenses on fair, reasonable, and non-discriminatory terms and conditions, to such patent rights it owns, solely to the extent a technology is essential to comply with an IETF standard. (*See* Exhibit 60.)

439.     As subsequent owners to the Nortel Patent Portfolio, Rockstar and Constellation are obligated to honor Nortel's express and implied F/RAND or royalty-free licensing commitments with respect to the '862 patent.

440.     Rockstar and Constellation have publicly repudiated their duty to honor their F/RAND or royalty-free licensing commitments with respect to the '862 patent by, among other things, asserting its patents against RFC 4364, titled "BGP/MPLS IP Virtual Private Networks (VPNs)."

441.     A dispute therefore exists between the parties concerning whether Rockstar and Constellation are obligated to offer licenses for the '862 patent on F/RAND or royalty-free terms.

442.     The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

443.     Plaintiffs seek a declaratory judgment that Rockstar and Constellation have not offered licenses for the '862 patent to Plaintiffs on terms consistent with F/RAND or royalty-free terms.

444.     Plaintiffs further seek a declaratory judgment setting forth the F/RAND or royalty-free terms for the '862 patent.

445.     Plaintiffs further seek a declaratory judgment that if Rockstar or Constellation refuse to offer licenses to the '862 patent to Plaintiffs on F/RAND or royalty-free terms, the '862 patent shall be unenforceable as to Plaintiffs.

## COUNT XXIV – DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '048 PATENT ON F/RAND OR ROYALTY-FREE TERMS
### (AGAINST ROCKSTAR AND CONSTELLATION)

446.     Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

447.   As discussed above, Nortel voluntarily agreed with the IETF to make available nonexclusive licenses on fair, reasonable, and non-discriminatory terms and conditions, to such patent rights it owns, solely to the extent a technology is essential to comply with an IETF standard.  (*See* Exhibit 60.)

448.   As subsequent owners to the Nortel Patent Portfolio, Rockstar and Constellation are obligated to honor Nortel's express and implied F/RAND or royalty-free licensing commitments with respect to the '048 patent.

449.   Rockstar and Constellation have publicly repudiated their duty to honor their F/RAND or royalty-free licensing commitments with respect to the '048 patent by, among other things, bringing suit against TWC for its use of RFC 4090, titled "Fast Reroute Extensions to RSVP-TE for LSP Tunnels."

450.   A dispute therefore exists between the parties concerning whether Rockstar and Constellation are obligated to offer licenses for the '048 patent on F/RAND or royalty-free terms.

451.   The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

452.   Plaintiffs seek a declaratory judgment that Rockstar and Constellation have not offered licenses for the '048 patent to Plaintiffs on terms consistent with F/RAND or royalty-free terms.

453.   Plaintiffs further seek a declaratory judgment setting forth the F/RAND or royalty-free terms for the '048 patent.

454.    Plaintiffs further seek a declaratory judgment that if Rockstar or Constellation refuse to offer licenses to the '048 patent to Plaintiffs on F/RAND or royalty-free terms, the '048 patent shall be unenforceable as to Plaintiffs.

## COUNT XXV – DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '917 PATENT ON F/RAND OR ROYALTY-FREE TERMS
### (AGAINST ROCKSTAR AND CONSTELLATION)

455.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

456.    As discussed above, Nortel voluntarily agreed with the IETF to make available nonexclusive licenses on fair, reasonable, and non-discriminatory terms and conditions, to such patent rights it owns, solely to the extent a technology is essential to comply with an IETF standard.  (*See* Exhibit 60.)

457.    As subsequent owners to the Nortel Patent Portfolio, Rockstar and Constellation are obligated to honor Nortel's express and implied F/RAND or royalty-free licensing commitments with respect to the '917 patent.

458.    Rockstar and Constellation have publicly repudiated their duty to honor their F/RAND or royalty-free licensing commitments with respect to the '917 patent by, among other things, bringing suit against TWC and Windstream for their use of RFC 4090, titled "Fast Reroute Extensions to RSVP-TE for LSP Tunnels."

459.    A dispute therefore exists between the parties concerning whether Rockstar and Constellation are obligated to offer licenses for the '917 patent on F/RAND or royalty-free terms.

460.    The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

461.   Plaintiffs seek a declaratory judgment that Rockstar and Constellation have not offered licenses for the '917 patent to Plaintiffs on terms consistent with F/RAND or royalty-free terms.

462.   Plaintiffs further seek a declaratory judgment setting forth the F/RAND or royalty-free terms for the '917 patent.

463.   Plaintiffs further seek a declaratory judgment that if Rockstar or Constellation refuse to offer licenses to the '917 patent to Plaintiffs on F/RAND or royalty-free terms, the '917 patent shall be unenforceable as to Plaintiffs.

## COUNT XXVI – DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '389 PATENT ON F/RAND OR ROYALTY-FREE TERMS (AGAINST ROCKSTAR AND CONSTELLATION)

464.   Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

465.   As discussed above, Nortel voluntarily agreed to make available nonexclusive licenses on fair, reasonable, and non-discriminatory terms and conditions, to such patent rights it owns, solely to the extent a technology is essential to comply with 3GPP, ATIS, and/or ETIS standards.

466.   As subsequent owners to the Nortel Patent Portfolio, Rockstar and Constellation are obligated to honor Nortel's express and implied F/RAND or royalty-free licensing commitments with respect to the '389 patent.

467.   Rockstar and Constellation have publicly repudiated their duty to honor their F/RAND or royalty-free licensing commitments with respect to the '389 patent by, among other things, bringing suit against TWC for its use of IMS as standardized in various 3GPP Releases.

468.     A dispute therefore exists between the parties concerning whether Rockstar and Constellation are obligated to offer licenses for the '389 patent on F/RAND or royalty-free terms.

469.     The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

470.     Plaintiffs seek a declaratory judgment that Rockstar and Constellation have not offered licenses for the '389 patent to Plaintiffs on terms consistent with F/RAND or royalty-free terms.

471.     Plaintiffs further seek a declaratory judgment setting forth the F/RAND or royalty-free terms for the '389 patent.

472.     Plaintiffs further seek a declaratory judgment that if Rockstar or Constellation refuse to offer licenses to the '389 patent to Plaintiffs on F/RAND or royalty-free terms, the '389 patent shall be unenforceable as to Plaintiffs.

## COUNT XXVII – DECLARATORY JUDGMENT OF DOCSIS AND PACKETCABLE LICENSE AND EXHAUSTION OF '474 PATENT RIGHTS (AGAINST ROCKSTAR AND CONSTELLATION)

473.     Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

474.     An actual controversy exists between Plaintiffs, Rockstar, and Constellation as to whether Plaintiffs are beneficiaries of the fully sublicensable royalty-free license that Nortel (including its predecessors-in-interest LANcity and Bay) gave to CableLabs under the '474 patent, which CableLabs sublicensed to implementers of the DOCSIS Standard and the PacketCable Standards.

475.     The issue of whether Plaintiffs are beneficiaries of a royalty-free license under the '474 patent is ripe for adjudication because Rockstar has insisted that Plaintiffs

infringe the '474 patent by practicing one or more DOCSIS or PacketCable standards published by CableLabs, and has demanded that Plaintiffs pay a royalty for a license to the '474 patent.

476. By alleging infringement of the '474 patent based solely on Plaintiffs' alleged use of DOCSIS or PacketCable, Rockstar has alleged that the '474 patent is essential to DOCSIS and PacketCable.

477. A judicial declaration is necessary and appropriate to decide whether Plaintiffs are beneficiaries of a royalty-free license under the '474 patent.

478. Rockstar's allegations of infringement, predicated on the alleged making, use, sale, offer for sale, or importation of vendor products, are barred pursuant to the licenses that its vendors hold to at least the '474 patent based on an express or implied license and/or the doctrine of patent exhaustion.

479. In light of Rockstar's allegations of infringement, an actual and justiciable controversy exists between Plaintiffs, Rockstar, and Constellation with respect to whether Rockstar's and Constellation's patent rights in the '474 patent are expressly or impliedly licensed to Plaintiffs and/or exhausted.

480. Absent a declaration that Rockstar's and Constellation's rights in the '474 patents are expressly or impliedly licensed to Plaintiffs and/or exhausted, Rockstar and Constellation will continue to wrongfully assert the '474 patent against Plaintiffs and thereby cause Plaintiffs irreparable harm and injury.

481. Based on the foregoing, Plaintiffs hereby request a declaratory judgment that Plaintiffs are beneficiaries of a royalty-free license to the '474 patent to the extent necessary to practice DOCSIS and/or PacketCable and that, if Rockstar and Constellation refuse to offer

royalty-free licenses to the '474 patent to Plaintiffs, it shall be unenforceable as to Plaintiffs with respect to DOCSIS and/or PacketCable.

## COUNT XXVIII – DECLARATORY JUDGMENT OF DOCSIS AND PACKETCABLE LICENSE AND EXHAUSTION OF '197 PATENT RIGHTS (AGAINST ROCKSTAR AND CONSTELLATION)

482.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

483.    An actual controversy exists between Plaintiffs, Rockstar, and Constellation as to whether Plaintiffs are beneficiaries of the fully sublicensable royalty-free license that Nortel (including its predecessors-in-interest LANcity and Bay) gave to CableLabs under the '197 patent, which CableLabs sublicensed to implementers of the DOCSIS Standard and the PacketCable Standards.

484.    The issue of whether Plaintiffs are beneficiaries of a royalty-free license under the '197 patent is ripe for adjudication because Rockstar has insisted that Plaintiffs infringe the '197 patent by practicing one or more DOCSIS or PacketCable standards published by CableLabs, and has demanded that Plaintiffs pay a royalty for a license to the '197 patent.

485.    By alleging infringement of the '197 patent based solely on Plaintiffs' alleged use of DOCSIS or PacketCable, Rockstar has alleged that the '197 patent is essential to DOCSIS and PacketCable.

486.    A judicial declaration is necessary and appropriate to decide whether Plaintiffs are beneficiaries of a royalty-free license under the '197 patent.

487.    Rockstar's allegations of infringement, predicated on the alleged making, use, sale, offer for sale, or importation of vendor products, are barred pursuant to the licenses that its vendors hold to at least the '197 patent based on an express or implied license and/or the doctrine of patent exhaustion.

488.    In light of Rockstar's allegations of infringement, an actual and justiciable controversy exists between Plaintiffs, Rockstar, and Constellation with respect to whether Rockstar's  and Constellation's patent rights in the '197 patent are expressly or impliedly licensed to Plaintiffs and/or exhausted.

489.    Absent a declaration that Rockstar's and Constellation's rights in the '197 patents are expressly or impliedly licensed to Plaintiffs and/or exhausted, Rockstar and Constellation will continue to wrongfully assert the '197 patent against Plaintiffs and thereby cause Plaintiffs irreparable harm and injury.

490.    Based on the foregoing, Plaintiffs hereby request a declaratory judgment that Plaintiffs are beneficiaries of a royalty-free license to the '197 patent to the extent necessary to practice DOCSIS and/or PacketCable and that, if Rockstar and Constellation refuse to offer royalty-free licenses to the '197 patent to Plaintiffs, it shall be unenforceable as to Plaintiffs with respect to DOCSIS and/or PacketCable.

## COUNT XXIX – DECLARATORY JUDGMENT OF DOCSIS AND PACKETCABLE LICENSE AND EXHAUSTION OF '893 PATENT RIGHTS (AGAINST ROCKSTAR AND CONSTELLATION)

491.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

492.    An actual controversy exists between Plaintiffs, Rockstar, and Constellation as to whether Plaintiffs are beneficiaries of the fully sublicensable royalty-free license that Nortel (including its predecessors-in-interest LANcity and Bay) gave to CableLabs under the '893 patent, which CableLabs sublicensed to implementers of the DOCSIS Standard and the PacketCable Standards.

493.    The issue of whether Plaintiffs are beneficiaries of a royalty-free license under the '893 patent is ripe for adjudication because Rockstar has insisted that Plaintiffs

infringe the '893 patent by practicing one or more DOCSIS or PacketCable standards published by CableLabs, and has demanded that Plaintiffs pay a royalty for a license to the '893 patent.

494.    By alleging infringement of the '893 patent based solely on Plaintiffs' alleged use of DOCSIS or PacketCable, Rockstar has alleged that the '893 patent is essential to DOCSIS and PacketCable.

495.    A judicial declaration is necessary and appropriate to decide whether Plaintiffs are beneficiaries of a royalty-free license under the '893 patent.

496.    Rockstar's allegations of infringement, predicated on the alleged making, use, sale, offer for sale, or importation of vendor products, are barred pursuant to the licenses that its vendors hold to at least the '893 patent based on an express or implied license and/or the doctrine of patent exhaustion.

497.    In light of Rockstar's allegations of infringement, an actual and justiciable controversy exists between Plaintiffs, Rockstar, and Constellation with respect to whether Rockstar's and Constellation's patent rights in the '893 patent are expressly or impliedly licensed to Plaintiffs and/or exhausted.

498.    Absent a declaration that Rockstar's and Constellation's rights in the '893 patents are expressly or impliedly licensed to Plaintiffs and/or exhausted, Rockstar and Constellation will continue to wrongfully assert the '893 patent against Plaintiffs and thereby cause Plaintiffs irreparable harm and injury.

499.    Based on the foregoing, Plaintiffs hereby request a declaratory judgment that Plaintiffs are beneficiaries of a royalty-free license to the '893 patent to the extent necessary to practice DOCSIS and/or PacketCable and that, if Rockstar and Constellation refuse to offer

royalty-free licenses to the '893 patent to Plaintiffs, it shall be unenforceable as to Plaintiffs with respect to DOCSIS and/or PacketCable.

## COUNT XXX – DECLARATORY JUDGMENT OF DOCSIS AND PACKETCABLE LICENSE AND EXHAUSTION OF '253 PATENT RIGHTS (AGAINST ROCKSTAR AND CONSTELLATION)

500.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

501.    An actual controversy exists between Plaintiffs, Rockstar, and Constellation as to whether Plaintiffs are beneficiaries of the fully sublicensable royalty-free license that Nortel (including its predecessors-in-interest LANcity and Bay) gave to CableLabs under the '253 patent, which CableLabs sublicensed to implementers of the DOCSIS Standard and the PacketCable Standards.

502.    The issue of whether Plaintiffs are beneficiaries of a royalty-free license under the '253 patent is ripe for adjudication because Rockstar has insisted that Plaintiffs infringe the '253 patent by practicing one or more DOCSIS or PacketCable standards published by CableLabs, and has demanded that Plaintiffs pay a royalty for a license to the '253 patent.

503.    By alleging infringement of the '253 patent based solely on Plaintiffs' alleged use of DOCSIS or PacketCable, Rockstar has alleged that the '253 patent is essential to DOCSIS and PacketCable.

504.    A judicial declaration is necessary and appropriate to decide whether Plaintiffs are beneficiaries of a royalty-free license under the '253 patent.

505.    Rockstar's allegations of infringement, predicated on the alleged making, use, sale, offer for sale, or importation of vendor products, are barred pursuant to the licenses that its vendors hold to at least the '253  patent based on an express or implied license and/or the doctrine of patent exhaustion.

506. In light of Rockstar's allegations of infringement, an actual and justiciable controversy exists between Plaintiffs, Rockstar, and Constellation with respect to whether Rockstar's and Constellation's patent rights in the '253 patent are expressly or impliedly licensed to Plaintiffs and/or exhausted.

507. Absent a declaration that Rockstar's and Constellation's rights in the '253 patent are expressly or impliedly licensed to Plaintiffs and/or exhausted, Rockstar and Constellation will continue to wrongfully assert the '253 patent against Plaintiffs and thereby cause Plaintiffs irreparable harm and injury.

508. Based on the foregoing, Plaintiffs hereby request a declaratory judgment that Plaintiffs are beneficiaries of a royalty-free license to the '253 patent to the extent necessary to practice DOCSIS and/or PacketCable and that, if Rockstar and Constellation refuse to offer royalty-free licenses to the '253 patent to Plaintiffs, it shall be unenforceable as to Plaintiffs with respect to DOCSIS and/or PacketCable.

## COUNT XXXI – UNFAIR COMPETITION IN VIOLATION OF DELAWARE LAW
### (AGAINST ROCKSTAR AND CONSTELLATION)

509. Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

510. Each Party, including Rockstar and Constellation, are Delaware entities and are subject to Delaware unfair competition law.

511. Plaintiffs have business relationships with vendors who regularly supply products for use in Plaintiffs' MSO network and who provide continuing support for those products.

512.    Plaintiffs also have business relationships with their subscribers, who utilize many of the services and products that Rockstar and Constellation accuse of patent infringement.

513.    As set forth above, Rockstar and Constellation have broadly accused any number of Plaintiffs' products and services—if not their entire business operations—of infringing any number of unidentified patents in Rockstar's and/or Constellation's patent portfolio.

514.    Those broad accusations are made in bad faith because:  (1) to the extent Rockstar and Constellation have identified specific products and services that infringe specific patents—beyond the "exemplary" contentions in their patent assertion letters—they are concealing those specific details from Plaintiffs; and (2) to the extent Rockstar and Constellation have not identified specific products and services that infringe specific patents—beyond the "exemplary" contentions in their patent assertion letters—they have no good faith basis for alleging further patent infringement.

515.    Those broad and bad faith accusations of unspecified patent infringement amount to unfair competition because they negatively interfere with the business relationship between Plaintiffs and their vendors and subscribers.  Because any number of unspecified products that a Plaintiff purchases from a vendor, such as ARRIS or Cisco, could fall under Rockstar's and Constellation's broad and bad faith patent infringement allegations, future purchases are negatively impacted.  Similarly, because any number of services that Plaintiffs offer to subscribers could fall under the broad and bad faith patent infringement allegations, their entire business is placed in uncertainty.  Because these allegations are vague and not detailed, it

frustrates Plaintiffs' ability to bring a declaratory judgment claim on specific patents to clear the air.

516.    As set forth above, despite being licensed to the '474, '197, '893, and '253 patents to the extent they are essential to use DOCSIS or PacketCable, Rockstar has wrongfully accused Plaintiffs' services of infringing those patents based solely on its use of DOCSIS and PacketCable.

517.    As set forth above, Rockstar and Constellation, unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate Plaintiffs' enjoyment of their rights under these F/RAND or royalty-free licensing commitments, prevented Plaintiffs from receiving the benefits Plaintiffs were entitled to receive under commitments to license the SEPs on F/RAND or royalty-free terms.    This conduct amounts to unfair competition under Delaware law.

518.    As set forth above, Rockstar has refused to enter into licensing negotiations with Plaintiffs or their vendors in the absence of highly-restrictive non-disclosure agreements intended to achieve licenses having non-uniform terms and obligations, and extort industry participants, including Plaintiffs, that have purchased equipment complying with well-established digital telecommunication standards.    These agreements prevent Plaintiffs from freely disclosing Rockstar allegations to their vendors to seek assistance or indemnification, and amounts to unfair competition under Delaware law.

519.    Defendants' unfair competition has interfered with Plaintiffs' valid business relationship with Cisco, ARRIS, other vendors, and their subscribers.

520.   As a result of the foregoing unfair competition, Plaintiffs have been damaged in their business or property and are threatened by imminent loss of profits, loss of vendors and customers, loss of ability to seek indemnification, and loss of goodwill.

521.   Plaintiffs respectfully request equitable relief sufficient to eliminate the effects of the Defendants' unlawful and unfair business acts.  Plaintiffs therefore respectfully request injunctive relief including, but not limited to:  (1) an injunction requiring Rockstar and Constellation to identify all patents from the Nortel Portfolio that have been assigned or licensed to each and that each entity presently owns; (2) an injunction requiring Rockstar and Constellation to identify with specificity in this action all patent infringement claims against Plaintiffs based on all patents identified in response to item (1) of this paragraph, either by notice to Plaintiffs so that Plaintiffs can bring appropriate declaratory judgment claims in this Court or by assertion of counterclaims in this action, and to the extent that Defendants cannot or refuse to particularize their allegations, enjoin Defendants from continuing to lodge unsupported and vague infringement allegations, which cast a cloud of Plaintiffs' business; (3) an injunction requiring Rockstar and Constellation to provide non-confidential, corrective, written statements that they have no further basis upon which to believe that Plaintiffs have infringed, either directly or indirectly, any patents identified in response to item (1) of this paragraph; (4) an injunction preventing Rockstar and Constellation from bringing further patent infringement claims based on the patents identified in item (1) of this paragraph against Plaintiffs to the extent those allegations are not made pursuant to item (2) of this paragraph; and (5) an injunction preventing Rockstar and Constellation from further accusing Plaintiffs of patent infringement based on patents to which they own a license.

522.    Plaintiffs also respectfully request:  (1) a declaration that the non-disclosure agreements that Rockstar and/or Constellation has forced any of them to sign in order to negotiate a license to either entity's patents are void and unenforceable; and (2) an injunction preventing Rockstar and/or Constellation from requiring Plaintiffs to sign a non-disclosure agreement in order to negotiate a license to either entity's patents.

523.    As a remedy for Defendants' unfair competition, Plaintiffs also respectfully requests compensatory damages, punitive damages, and such other relief as this cause of action allows.

## COUNT XXXII – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '474 PATENT (AGAINST ROCKSTAR AND CONSTELLATION)

524.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

525.    At least because of Rockstar's patent enforcement behavior described above, a substantial, immediate, and real controversy exists regarding whether Plaintiffs infringe the '474 patent.

526.    The issue of whether Plaintiffs infringe any claims of the '474 patent is ripe for adjudication because Rockstar, on behalf of itself or any subsequent owner of the '474 patent, has insisted that Plaintiffs and other MSOs infringe the '474 patent and has demanded that each pay for a license to the '474 patent.

527.    The issue of whether Plaintiffs infringe any claims of the '474 patent is also ripe for adjudication because Rockstar, on behalf of itself or any subsequent owner of the '474 patent, has generally asserted that Plaintiffs infringe upon communications patents within the portfolio and have taken steps that give rise to a reasonable apprehension that Plaintiffs will be sued for infringement of the '474 patent.

528.    Plaintiffs do not infringe the '474 patent directly, contributorily, or by inducement because Plaintiffs do not practice any of the claims of the '474 patent.

529.    Plaintiffs request that the Court enter a declaratory judgment that Plaintiffs have not and do not infringe any claim of the '474 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies:

a.      High-Speed Internet;

b.      DOCSIS 2.0;

c.      DOCSIS 3.0;

d.      MSO Digital TV Services; or

e.      MSO Phone Services.

## COUNT XXXIII – DECLARATORY JUDGMENT OF
## NON-INFRINGEMENT OF THE '862 PATENT
## (AGAINST ROCKSTAR AND CONSTELLATION)

530.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

531.    At least because of Rockstar's patent enforcement behavior described above, a substantial, immediate, and real controversy exists regarding whether Plaintiffs infringe the '862 patent.

532.    The issue of whether Plaintiffs infringe any claims of the '862 patent is ripe for adjudication because Rockstar, on behalf of itself or any subsequent owner of the '862 patent, has insisted that Charter and other MSOs infringe the '862 patent and has demanded that they pay for a license to the '862 patent.

533.    The issue of whether Plaintiffs infringe any claims of the '862 patent is also ripe for adjudication because Rockstar, on behalf of itself or any subsequent owner of the '862 patent, has generally asserted that Plaintiffs infringe upon communications patents within

the portfolio and has taken steps that give rise to a reasonable apprehension that Plaintiffs will be sued for infringement of the '862 patent.

534.    Plaintiffs do not infringe the '862 patent directly, contributorily, or by inducement because Plaintiffs do not practice any of the claims of the '862 patent.

535.    Plaintiffs request that the Court enter a declaratory judgment that Plaintiffs have not and do not infringe any claim of the '862 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies

        a.      Level 3 VPN Services.

## COUNT XXXIV – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '197 PATENT (AGAINST ROCKSTAR AND CONSTELLATION)

536.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

537.    At least because of Rockstar's patent enforcement behavior described above, a substantial, immediate, and real controversy exists regarding whether Plaintiffs infringe the '197 patent.

538.    The issue of whether Plaintiffs infringe any claims of the '197 patent is ripe for adjudication because Rockstar, on behalf of itself or any subsequent owner of the '197 patent, has insisted that Plaintiffs and other MSOs infringe the '197 patent and has demanded that each pay for a license to the '197 patent.

539.    The issue of whether Plaintiffs infringe any claims of the '197 patent is also ripe for adjudication because Rockstar, on behalf of itself or any subsequent owner of the '197 patent, has generally asserted that Plaintiffs infringe upon communications patents within the portfolio and have taken steps that give rise to a reasonable apprehension that Plaintiffs will be sued for infringement of the '197 patent.

540.    Plaintiffs do not infringe the '197 patent directly, contributorily, or by inducement because Plaintiffs do not practice any of the claims of the '197 patent.

541.    Plaintiffs request that the Court enter a declaratory judgment that Plaintiffs have not and do not infringe any claim of the '197 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies

      a.    High-Speed Internet;

      b.    DOCSIS 2.0;

      c.    DOCSIS 3.0;

      d.    MSO Digital TV Services; or

      e.    MSO Phone Services.

## COUNT XXXV – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '649 PATENT (AGAINST CONSTELLATION)

542.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

543.    At least because of Rockstar's patent enforcement behavior described above, a substantial, immediate, and real controversy exists regarding whether Plaintiffs infringe the '649 patent.

544.    The issue of whether Plaintiffs infringe any claims of the '649 patent is ripe for adjudication because Constellation has brought suit against TWC for infringement of the '649 patent, accusing switched digital video, video on demand, or IP cable television services, which gives rise to a reasonable apprehension that Plaintiffs will also be sued for infringement of the '649 patent for providing switched digital video, video on demand, or IP cable television services.

545.     Plaintiffs do not infringe the '649 patent directly, contributorily, or by inducement because Plaintiffs do not practice any of the claims of the '649 patent.

546.     Plaintiffs request that the Court enter a declaratory judgment that Plaintiffs have not and do not infringe any claim of the '649 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies

  a.  Switched Digital Video;

  b.  Video On Demand; or

  c.  IP Cable TV Services.

## COUNT XXXVI – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '893 PATENT (AGAINST ROCKSTAR AND CONSTELLATION)

547.     Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

548.     At least because of Rockstar's patent enforcement behavior described above, a substantial, immediate, and real controversy exists regarding whether Plaintiffs infringe the '893 patent.

549.     The issue of whether Plaintiffs infringe any claims of the '893 patent is ripe for adjudication because Rockstar, on behalf of itself or any subsequent owner of the '893 patent, has insisted that Charter and WOW infringe the '893 patent and has demanded that each pay for a license to the '893 patent.

550.     The issue of whether Plaintiffs infringe any claims of the '893 patent is also ripe for adjudication because Rockstar, on behalf of itself or any subsequent owner of the '893 patent, has generally asserted that Plaintiffs infringe upon communications patents within the portfolio and have taken steps that give rise to a reasonable apprehension that Plaintiffs will be sued for infringement of the '893 patent.

551.    Plaintiffs do not infringe the '893 patent directly, contributorily, or by inducement because Plaintiffs do not practice any of the claims of the '893 patent.

552.    Plaintiffs request that the Court enter a declaratory judgment that Plaintiffs have not and do not infringe any claim of the '893 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies

    a.    High-Speed Internet;

    b.    DOCSIS 2.0;

    c.    DOCSIS 3.0;

    d.    eMTA;

    e.    PacketCable 1.5; or

    f.    MSO Phone Services.

## COUNT XXXVII – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '397 PATENT (AGAINST ROCKSTAR)

553.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

554.    At least because of Rockstar's patent enforcement behavior described above, a substantial, immediate, and real controversy exists regarding whether Plaintiffs infringe the '397 patent.

555.    The issue of whether Plaintiffs infringe any claims of the '397 patent is ripe for adjudication because Rockstar, on behalf of itself or any subsequent owner of the '397 patent, has insisted that Charter infringes the '397 patent and has demanded that it pay for a license to the '397 patent.

556.    The issue of whether Plaintiffs infringe any claims of the '397 patent is also ripe for adjudication because Rockstar, on behalf of itself or any subsequent owner of the

'397 patent, has generally asserted that Plaintiffs infringe upon communications patents within the portfolio and have taken steps that give rise to a reasonable apprehension that Plaintiffs will be sued for infringement of the '397 patent.

557.     Plaintiffs do not infringe the '397 patent directly, contributorily, or by inducement because Plaintiffs do not practice any of the claims of the '397 patent.

558.     Plaintiffs request that the Court enter a declaratory judgment that Plaintiffs have not and do not infringe any claim of the '397 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies

    a.     GigE;

    b.     Fiber Internet Services; or

    c.     10GigE.

## COUNT XXXVIII – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '253 PATENT (AGAINST ROCKSTAR AND CONSTELLATION)

559.     Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

560.     At least because of Rockstar's patent enforcement behavior described above, a substantial, immediate, and real controversy exists regarding whether Plaintiffs infringe the '253 patent.

561.     The issue of whether Plaintiffs infringe any claims of the '253 patent is ripe for adjudication because Rockstar, on behalf of itself or any subsequent owner of the '253 patent, has insisted that Charter and WOW infringe the '253 patent and has demanded that each pay for a license to the '253 patent.

562.     The issue of whether Plaintiffs infringe any claims of the '253 patent is also ripe for adjudication because Rockstar, on behalf of itself or any subsequent owner of the

'253 patent, has generally asserted that Plaintiffs infringe upon communications patents within the portfolio and have taken steps that give rise to a reasonable apprehension that Plaintiffs will be sued for infringement of the '253 patent.

563.    Plaintiffs do not infringe the '253 patent directly, contributorily, or by inducement because Plaintiffs do not practice any of the claims of the '253 patent.

564.    Plaintiffs request that the Court enter a declaratory judgment that Plaintiffs have not and do not infringe any claim of the '253 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies

      a.      High-Speed Internet;

      b.      DOCSIS 2.0;

      c.      DOCSIS 3.0;

      d.      eMTA;

      e.      PacketCable 1.5; or

      f.      MSO Phone Services.

## COUNT XXXIX – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '389 PATENT (AGAINST CONSTELLATION)

565.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

566.    At least because of Rockstar's patent enforcement behavior described above, a substantial, immediate, and real controversy exists regarding whether Plaintiffs infringe the '389 patent.

567.    The issue of whether Plaintiffs infringe any claims of the '389 patent is ripe for adjudication because Constellation has brought suit against TWC and Windstream for infringement of the '389 patent, accusing point-to-multipoint access networks, including

Ethernet Passive Optical Networks and whole-house entertainment networks, which gives rise to a reasonable apprehension that Plaintiffs will be sued for infringement of the '389 patent for providing point-to-multipoint access networks, including Ethernet Passive Optical Networks and whole-house entertainment networks.

568.   Plaintiffs do not infringe the '389 patent directly, contributorily, or by inducement because Plaintiffs do not practice any of the claims of the '389 patent.

569.   Plaintiffs request that the Court enter a declaratory judgment that Plaintiffs have not and do not infringe any claim of the '389 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies

        a.        IP Multimedia Subsystem Networks.

### COUNT XL – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '048 PATENT (AGAINST ROCKSTAR AND CONSTELLATION)

570.   Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

571.   At least because of Rockstar's patent enforcement behavior described above, a substantial, immediate, and real controversy exists regarding whether Plaintiffs infringe the '048 patent.

572.   The issue of whether Plaintiffs infringe any claims of the '048 patent is ripe for adjudication because Rockstar, on behalf of itself or any subsequent owner of the '048 patent, has generally asserted that Plaintiffs infringe upon communications patents within the portfolio and have taken steps that give rise to a reasonable apprehension that Plaintiffs will be sued for infringement of the '048 patent.

573.   Plaintiffs do not infringe the '048 patent directly, contributorily, or by inducement because Plaintiffs do not practice any of the claims of the '048 patent.

117

574.    Plaintiffs request that the Court enter a declaratory judgment that Plaintiffs have not and do not infringe any claim of the '048 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies

a.    Multi-Protocol Label Switching protocols or networks.

## COUNT XLI – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '879 PATENT (AGAINST ROCKSTAR AND CONSTELLATION)

575.    Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

576.    At least because of Rockstar's patent enforcement behavior described above, a substantial, immediate, and real controversy exists regarding whether Plaintiffs infringe the '879 patent.

577.    The issue of whether Plaintiffs infringe any claims of the '879 patent is ripe for adjudication because Rockstar, on behalf of itself or any subsequent owner of the '879 patent, has insisted that Charter infringes the '879 patent and has demanded that it pay for a license to the '879 patent.

578.    The issue of whether Plaintiffs infringe any claims of the '879 patent is also ripe for adjudication because Rockstar, on behalf of itself or any subsequent owner of the '879 patent, has generally asserted that Plaintiffs infringe upon communications patents within the portfolio and have taken steps that give rise to a reasonable apprehension that Plaintiffs will be sued for infringement of the '879 patent.

579.    Plaintiffs do not infringe the '879 patent directly, contributorily, or by inducement because Plaintiffs do not practice any of the claims of the '879 patent.

580.   Plaintiffs request that the Court enter a declaratory judgment that Plaintiffs have not and do not infringe any claim of the '879 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies

a.   Point-to-multipoint access networks, including Ethernet Passive Optical Networks and whole-house entertainment networks.

## COUNT XLII – DECLARATORY JUDGMENT OF
## NON-INFRINGEMENT OF THE '917 PATENT
## (AGAINST ROCKSTAR AND CONSTELLATION)

581.   Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

582.   At least because of Rockstar's patent enforcement behavior described above, a substantial, immediate, and real controversy exists regarding whether Plaintiffs infringe the '917 patent.

583.   The issue of whether Plaintiffs infringe any claims of the '917 patent is ripe for adjudication because Rockstar, on behalf of itself or any subsequent owner of the '917 patent, has generally asserted that Plaintiffs infringe upon communications patents within the portfolio and have taken steps that give rise to a reasonable apprehension that Plaintiffs will be sued for infringement of the '917 patent.

584.   Plaintiffs do not infringe the '917 patent directly, contributorily, or by inducement because Plaintiffs do not practice any of the claims of the '917 patent.

585.   Plaintiffs request that the Court enter a declaratory judgment that Plaintiffs have not and do not infringe any claim of the '917 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies

a.   Multi-Protocol Label Switching protocols or networks.

## COUNT XLIII – DECLARATORY JUDGMENT OF
## NON-INFRINGEMENT OF THE '299 PATENT
## (AGAINST CONSTELLATION)

586. Plaintiffs reallege and incorporate by reference the allegations set forth in the other sections of this Complaint.

587. At least because of Rockstar's patent enforcement behavior described above, a substantial, immediate, and real controversy exists regarding whether Plaintiffs infringe the '299 patent.

588. The issue of whether Plaintiffs infringe any claims of the '299 patent is ripe for adjudication because Constellation has brought suit against TWC for infringement of the '299 patent, accusing switched digital video, video on demand, or IP cable television services, which gives rise to a reasonable apprehension that Plaintiffs will also be sued for infringement of the '299 patent for providing switched digital video, video on demand, or IP cable television services.

589. Plaintiffs do not infringe the '299 patent directly, contributorily, or by inducement because Plaintiffs do not practice any of the claims of the '299 patent.

590. Plaintiffs request that the Court enter a declaratory judgment that Plaintiffs have not and do not infringe any claim of the '299 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies

  a.  Switched Digital Video;

  b.  Video On Demand; or

  c.  IP Cable TV Services.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the Court to enter judgment for them and against Rockstar and Constellation as follows:

1.      Specific performance by Rockstar and Constellation of their obligations to provide any necessary licenses to the '397, '879, '862, '048, '917, and '389 patents on F/RAND or royalty-free licensing terms;

2.      Restitution and/or expectancy damages from Rockstar and Constellation for breaches of commitments to license the '397, '879, '862, '048, '917, and '389 patents on F/RAND or royalty-free terms;

3.      Restitution and/or expectancy damages from Rockstar and Constellation in an amount to be proven at trial for breaches of their obligations to deal fairly and act in good faith under commitments to license the '397, '879, '862, '048, '917, and '389 patents on F/RAND or royalty-free terms;

4.      An injunction requiring Rockstar, to the extent it has the power and/or control to do so, to require Constellation to honor F/RAND or royalty-free commitments attached to the '397, '879, '862, '048, '917, and '389 patents from the Nortel Patent Portfolio;

5.      A declaratory judgment:  (a) that Rockstar and Constellation have not offered licenses to Plaintiffs on terms consistent with their F/RAND or royalty-free licensing commitments, (b) setting forth the F/RAND or royalty-free terms for each the '397, '879, '862, '048, '917, and '389 patents; and (c) that if Defendants refuse to offer licenses to the '397, '879, '862, '048, '917, and '389 patents to Plaintiffs on F/RAND or royalty-free terms, they shall be unenforceable as to Plaintiffs;

6.      Specific performance by Rockstar and Constellation of their obligations to provide any necessary licenses to the '474, '197, '893, and '253 patents on royalty-free licensing terms;

7.      Restitution and/or expectancy damages from Rockstar and Constellation for breaches of commitments to license the '474, '197, '893, and '253 patents on royalty-free terms;

8.      Restitution and/or expectancy damages from Rockstar and Constellation in an amount to be proven at trial for breaches of their obligations to deal fairly and act in good faith under commitments to license '474, '197, '893, and '253 patents on royalty-free terms;

9.      An injunction requiring Rockstar, to the extent it has the power and/or control to do so, to require Constellation to honor royalty-free commitments attached to the '474, '197, '893, and '253 patents from the Nortel Patent Portfolio;

10.     A declaratory judgment that Rockstar's allegations of infringement of the '474, '197, '893, and '253 patents through the use, sale or offer to sell vendor products and services practicing DOCSIS or PacketCable standards are barred by license and/or patent exhaustion;

11.     Equitable relief sufficient to eliminate the effects of the Defendants' unlawful and unfair business acts, including, but not limited to:  (a) an injunction requiring Rockstar and Constellation to identify all patents from the Nortel Portfolio that have been assigned or licensed to each and that each entity presently owns; (b) an injunction requiring Rockstar and Constellation to identify with specificity in this action all patent infringement claims against Plaintiffs based on all patents identified in response to item (a) of this paragraph, either by notice to Plaintiffs so that Plaintiffs can bring appropriate declaratory judgment claims

in this Court or by assertion of counterclaims in this action, and to the extent Defendants cannot or refuse to particularize their allegations, enjoin Defendants from continuing to lodge unsupported and vague infringement allegations, which cast a cloud of Plaintiffs' business; (c) an injunction requiring Rockstar and Constellation to provide non-confidential, corrective, written statements that they have no further basis upon which to believe that Plaintiffs have infringed, either directly or indirectly, any patents identified in response to item (a) of this paragraph; (d) an injunction preventing Rockstar and Constellation from bringing further patent infringement claims based on the patents identified in item (a) of this paragraph against Plaintiffs to the extent those allegations are not made pursuant to item (b) of this paragraph; and (e) an injunction preventing Rockstar and Constellation from further accusing Plaintiffs of patent infringement based on patents to which they own a license.

12.    A declaration that the non-disclosure agreements that Rockstar and/or Constellation have forced Plaintiffs to sign in order to negotiate a license to either entity's patents are void and unenforceable.

13.    An injunction preventing Rockstar and/or Constellation from requiring Plaintiffs to sign a non-disclosure agreement in order to negotiate a license to either entity's patents.

14.    As a remedy for Defendants' unfair competition, Plaintiffs also respectfully requests compensatory damages, punitive damages, and such other relief as this cause of action allows.

15.    Declaring that Plaintiffs do not directly or indirectly infringe the '474 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies:

      a.      High-Speed Internet;

      b.      DOCSIS 2.0;

      c.      DOCSIS 3.0;

      d.      MSO Digital TV Services; or

      e.      MSO Phone Services;

16.      Declaring that Plaintiffs do not directly or indirectly infringe the '862 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies:

      a.      Level 3 VPN Services;

17.      Declaring that Plaintiffs do not directly or indirectly infringe the '197 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies:

      a.      High-Speed Internet;

      b.      DOCSIS 2.0;

      c.      DOCSIS 3.0;

      d.      MSO Digital TV Services; or

      e.      MSO Phone Services;

18.      Declaring that Plaintiffs do not directly or indirectly infringe the '649 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies:

      a.      Switched Digital Video;

      b.      Video On Demand; or

      c.      IP Cable TV Services;

19.    Declaring that Plaintiffs do not directly or indirectly infringe the '893 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies:

     a.    High-Speed Internet;

     b.    DOCSIS 2.0;

     c.    DOCSIS 3.0;

     d.    eMTA;

     e.    PacketCable 1.5; or

     f.    MSO Phone Services;

20.    Declaring that Plaintiffs do not directly or indirectly infringe the '397 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies:

     a.    GigE;

     b.    Fiber Internet Services; or

     c.    10GigE;

21.    Declaring that Plaintiffs do not directly or indirectly infringe the '253 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies:

     a.    High-Speed Internet;

     b.    DOCSIS 2.0;

     c.    DOCSIS 3.0;

     d.    eMTA;

     e.    PacketCable 1.5; or

      f.        MSO Phone Services;

22.      Declaring that Plaintiffs do not directly or indirectly infringe the '389 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies:

      a.        IP Multimedia Subsystem Networks;

23.      Declaring that Plaintiffs do not directly or indirectly infringe the '048 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies:

      a.        Multi-Protocol Label Switching protocols or networks;

24.      Declaring that Plaintiffs do not directly or indirectly infringe the '879 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies:

      a.        Point-to-multipoint access networks, including Ethernet Passive Optical Networks and whole-house entertainment networks;

25.      Declaring that Plaintiffs do not directly or indirectly infringe the '917 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies:

      a.        Multi-Protocol Label Switching protocols or networks;

26.      Declaring that Plaintiffs do not directly or indirectly infringe the '299 patent by offering the following products or services, or by complying with, in whole or in part, the following technologies:

      a.        Switched Digital Video;

      b.        Video On Demand; or

      c.      IP Cable TV Services;

     27.    Declaring that judgment be entered in favor of Plaintiffs and against Defendants on each of Plaintiffs' claims;

     28.    Finding that this an exceptional case under 35 U.S.C. § 285;

     29.    Awarding Plaintiffs their costs and attorneys' fees pursuant to Rule 54(d) of the Federal Rules of Civil Procedure or other applicable authority; and

     30.    Awarding Plaintiffs such other and further relief as the Court deems just and proper.

## JURY DEMAND

     Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury for all claims so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

OF COUNSEL:

Thomas L. Duston
Kevin D. Hogg
John R. Labbé
Benjamin T. Horton
MARSHALL, GERSTEIN BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL  60606-6357
(312) 474-6300
*Attorneys for Charter Communications, Inc.*

Rodger D. Smith II (#3778)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
jtigan@mnat.com

*Attorneys for Plaintiffs*

William Ray Price, Jr.
Jennifer E. Hoekel
Richard L. Brophy
Mark A. Thomas
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, MO  63105
(314) 621-5070
*Attorneys for WideOpenWest Finance LLC*
*a/k/a WOW! Internet, Cable & Phone,*
*Knology, Inc. and Cequel Communications,*
*LLC d/b/a Suddenlink Communications*

Charles W. Steese
IJay Palansky
STEESE, EVANS & FRANKEL, P.C.
6400 South Fiddlers Green Circle, Suite 1820
Denver, CO  8011
(720) 200-0676
*Attorneys for WideOpenWest Finance LLC*
*a/k/a WOW! Internet, Cable & Phone and*
*Knology, Inc.*

June 6, 2014 - Original Filing Date
8299298
 June 13, 2014 - Redacted Filing Date

John M. Desmarais
Jonas R. McDavit
Karim Z. Oussayef
Dustin F. Guzior
Michael P. Stadnick
Alex Henriques
Edward Terchunian
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400

*Attorneys for Charter Communications, Inc.,*
*WideOpenWest Finance LLC a/k/a WOW!*
*Internet, Cable & Phone, Knology, Inc.,*
*Cequel Communications, LLC d/b/a*
*Suddenlink Communications and Cable One,*
*Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 6, 2014, I caused the foregoing to be electronically

filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all

registered participants.

I further certify that I caused copies of the foregoing document to be served on

June 6, 2014, upon the following in the manner indicated:

Brian E. Farnan, Esquire                                      *VIA ELECTRONIC MAIL*
Michael J. Farnan , Esquire
Joseph J. Farnan, Jr., Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants Rockstar Consortium*
*US LP and Constellation Technologies LLC*

Benjamin W. Hattenbach, Esquire                              *VIA ELECTRONIC MAIL*
Jason Sheasby, Esquire
Alan Heinrich, Esquire
Joseph M. Lipner, Esquire
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
*Attorneys for Defendants Rockstar Consortium*
*US LP and Constellation Technologies LLC*

Melissa R. McCormick, Esquire                               *VIA ELECTRONIC MAIL*
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA  92660
*Attorneys for Defendants Rockstar Consortium*
*US LP and Constellation Technologies LLC*


*/s/ Rodger D. Smith II*
_____
Rodger D. Smith II (#3778)